## 74533. LUCAS v. THE STATE.
(360 SE2d 12)

BANKE, Presiding Judge.

The appellant was convicted of theft by taking, false imprisonment, and reckless endangerment of the bodily safety of another. He appeals the denial of his motion for new trial.

The evidence, construed most favorably towards the verdict, may

be summarized as follows: In the spring and summer of 1982, the appellant visited the 72-year-old victim at her home in New York City and began to assume control over her financial affairs. When a friend of the victim asked the appellant during this period what sort of work he did, he replied that he "took care of old ladies." The victim ultimately moved from New York and began living with the appellant in his home in Hahira, Georgia. Hahira had evidently been the hometown of the victim's deceased former husband, and the appellant had apparently become acquainted with her there many years earlier.

Prior to leaving New York, the victim had begun to exhibit symptoms of senility; and over the course of the ensuing two-and-a-half years that she was living at the appellant's home in Hahira, her mental condition deteriorated rapidly. Throughout this period, she was receiving social security and retirement benefit checks in the combined amount of $1,247 per month, which checks the appellant endorsed and negotiated. Additionally, the appellant received at least half the proceeds of a $15,000 savings account which the victim liquidated shortly before leaving New York. Also, the appellant admitted having purchased two parcels of New Mexico real estate from the victim for $600 apiece, one of which he sold almost immediately for $1,000 and the other of which he testified he would be willing to sell for $1,200. Altogether, it was shown that the appellant had controlled well over $40,000 of the victim's money during the two-and-a-half year period he was "caring" for her, none of which he was able and/or willing to account for.

In late December of 1984, the appellant deposited the victim at a hospital emergency room in Valdosta in what was described by the attending physician as a dehydrated and comatose condition. When the appellant reappeared at the hospital later that day, the attending physician attempted unsuccessfully to persuade him to place the victim in a nursing home. After two to three weeks of hospital treatment, she was again released to his care. The physician indicated that although the victim's mental capacity was severely impaired at this time due to hardening of the arteries of the brain, physically she was "in really good shape." Approximately two months later, however, she was returned to the hospital "in even worse shape" than before, suffering from, among other things, extensive and severe skin ulcerations, which the physician characterized as indicative of neglect. Whereas the victim had at least had the physical and mental capacity to eat food at the time of her release from her initial hospitalization, she was not able to do so upon her return, and there was medical testimony that she would probably never be able to do so again. *Held*:

1. The appellant was not represented by an attorney at trial, and he contends on appeal that the trial court erred in failing to conduct an inquiry to insure that his decision to proceed pro se was voluntary

and intelligent. As support for this contention, he cites *Clarke v. Zant*, 247 Ga. 194, 197 (275 SE2d 49) (1981), wherein the Supreme Court held as follows: "[I]n future cases, the record should reflect a finding on the part of the trial court that the defendant has validly chosen to proceed pro se. The record should also show that this choice was made after the defendant was made aware of his right to counsel and the dangers of proceeding without counsel."

While the record does not reflect that any such formal inquiry was conducted prior to trial in the present case, the following exchange did occur between the trial court and the appellant during the trial: "The Court: As you have . . . stated to me on several occasions, Mr. Lucas, you have both the financial resources and the ability to hire a lawyer, and you chose to represent yourself, is that not true? Appellant: Yes, sir. The Court: And you were aware, were you not, that you were going to be bound by the rules of evidence before we ever came into the case? I told you that, didn't I? Appellant: Yes, sir, Your Honor." Also the transcript contains an assertion by the appellant that he was "worth almost $400,000."

While it certainly would have been preferable for the court to have advised the appellant formally prior to trial of the "dangers of proceeding without counsel," we hold that, in view of the appellant's failure to specify at the hearing on his motion for new trial wherein his pre-trial awareness of the dangers of proceeding without counsel was deficient, the foregoing portions of the transcript reasonably and sufficiently establish that his decision to represent himself was informed and voluntary. Moreover, since the record further reveals that the appellant presented a voluminous number of defense exhibits, subpoenaed and questioned several witnesses on his behalf, conducted a vigorous cross-examination of the state's witnesses, and was allowed to conduct an in-camera examination of the state's file prior to trial, and since the appellant has failed to specify on appeal any particular instances in which his lack of representation by an attorney might have undermined or impeded his defense, we conclude that any error the court may have committed in failing to elicit from him a formal waiver of his right to counsel prior to trial was harmless beyond a reasonable doubt.

2. The evidence, considered as a whole, was sufficient to enable a rational trier of fact to find the appellant guilty beyond a reasonable doubt of theft by taking (OCGA § 16-8-2) and recklessly causing harm to or endangering the bodily safety of another person (OCGA § 16-5-60). However, we find no evidence to indicate that the appellant at any time confined or detained the victim in violation of her personal liberty (i.e., against her will), and consequently we find no evidentiary basis for his conviction of false imprisonment (OCGA § 16-5-41). See generally *Everett, Ridley & Co. v. Holcomb*, 1 Ga. App. 794,

798 (58 SE 287) (1907). Indeed, it appears that the victim's former sister-in-law (i.e., the sister of her deceased husband) lived across the street from the appellant's home and was concerned enough for the victim's welfare to visit her there on several occasions, yet she gave no indication in her testimony that she ever saw or heard anything to suggest that the victim was being held against her will. The conviction of false imprisonment is consequently reversed.

3. The appellant contends that the following charge to the jury involving the element of criminal intent was unconstitutionally burden shifting, due to the use of the words "presumption" and "presumed": "Every person may be inferred to be of sound mind and discretion but this *presumption* may be rebutted. You may infer that the acts of a person of sound mind and discretion *are presumed* to be the product of his will and you may infer that a person of sound mind and discretion *is presumed* to intend both the natural and the probable consequences of his acts or actions in a given case. But, whether or not you make such an inference or inferences is a matter solely within your discretion." (Emphasis supplied.)

A charge that every person is presumed to be of sound mind and discretion but that the presumption may be rebutted is not unconstitutionally burden shifting for the simple reason that the state has no evidentiary burden on the issue of the defendant's sanity. See *Adams v. State*, 254 Ga. 481 (1) (b), (2) (330 SE2d 869) (1985); *Loftin v. State*, 180 Ga. App. 613 (2) (349 SE2d 777) (1986). With respect to the remaining portion of the charge, i.e., the portion which actually dealt with criminal intent, the language employed by the court was entirely permissive and thus could not reasonably be interpreted as creating a mandatory presumption with regard to criminal intent, notwithstanding the inappropriate use of the word "presumed." Consequently, we hold that the charge was not unconstitutionally burden shifting. Accord *Heard v. State,* 175 Ga. App. 793 (334 SE2d 374) (1985); *Freeman v. State,* 183 Ga. App. 264 (358 SE2d 623) (1987). Compare *Francis v. Franklin,* 471 U. S. ___ (105 SC 1965, 85 LE2d 344) (1985); *Williams v. State,* 180 Ga. App. 893, 894 (350 SE2d 768) (1986); *Boswell v. State,* 176 Ga. App. 855 (1) (338 SE2d 62) (1985). However, we recommend that henceforth the trial court employ the language set forth in the Suggested Pattern Jury Instructions Prepared by the Council of Superior Court Judges of Georgia, Vol. II (Criminal Cases) at p. 25 (1984 ed.), as follows: "You may infer in this case, if you wish to do so, that the acts of a person of sound mind and discretion are the product of his will; and you may infer, if you wish to do so, that a person of sound mind and discretion intends the natural and probable consequences of his acts. Whether you make any such inference or inferences in this case is a matter solely within the discretion of the jury."

4. The appellant contends that the trial court erred in failing to instruct the jury on his sole defense, which was that the victim had voluntarily and of her own free will authorized him to manage her affairs and attend to her needs. Pretermitting whether such a showing on his part would have set forth an affirmative defense to the charge of false imprisonment, it clearly did not set forth a defense to the charges of theft and reckless endangerment. Consequently, the court's failure to give such a charge establishes no ground for reversal of these two convictions.

*Judgment affirmed in part and reversed in part. Carley and Benham, JJ., concur.*

DECIDED JUNE 23, 1987 —
REHEARING DENIED JULY 13, 1987 — 

*Gregory Homer*, for appellant.
*H. Lamar Cole, District Attorney*, for appellee.