## 41089. MURRAY v. THE STATE.
(317 SE2d 193)

GREGORY, Justice.

Julian Anthony Murray, Jr. was convicted of the murder of his estranged wife and sentenced to life imprisonment. The undisputed evidence at trial showed that on the day of the murder, the couple's three-year-old son was visiting with the defendant at the home of the defendant's great-aunt. At the defendant's request the victim reluctantly came to the residence to pick up the child, ostensibly so that the defendant could go on a hunting trip the following morning. The defendant admitted he was angry because the victim did not want to keep the child that night. The victim's sister testified she drove the victim to pick up the child. When she stopped the car in front of the house the defendant pulled the victim out of the car, holding a knife to her chest. As the defendant dragged the victim into the backyard, he yelled at the victim's sister to drive away. The sister immediately drove to the police station for help.

The defendant's aunt watched these developments from the house. She ran into the backyard and attempted to convince the defendant to release the victim. In response the defendant told his aunt she "better not" call the police. The aunt nonetheless went back into the house and called the police. When she next looked out into the backyard, the victim was lying face down on the ground. The defendant was no longer on the scene. The victim died minutes later.

The evidence showed the defendant stabbed the victim numerous times in the presence of their three-year-old child, then grabbed his camping gear, including two sleeping bags, and fled into nearby woods. Using tracking dogs, police located the abandoned camping gear and later apprehended the defendant. The defendant was treated for self-inflicted cuts to his wrists and placed in police custody. The defendant stated to police the victim was jealous because

he was seeing his ex-wife. The defendant admitted he "hurt" the victim "by cutting" her and fled from the crime scene because he was afraid.

1. The defendant entered a general plea of insanity at trial. While he testified he could not remember any of the events surrounding the victim's death, the defense conceded the defendant had committed acts which resulted in the victim's death, but maintained the defendant was insane at the time of the crime. The defendant complains the evidence at trial was insufficient to support the jury's finding that he was sane at the time of the crime.

The defendant offered the testimony of numerous relatives and co-workers who expressed their opinions that the defendant was unable to distinguish right from wrong. The defendant's aunt who pled with the defendant to release the victim testified the defendant "looked crazy, like an animal" just before the victim's death. The defense also showed the defendant had attempted suicide on a number of occasions and had demolished at least two automobiles with a club.

The State offered the testimony of the arresting GBI agent that the defendant was coherent at the time of his arrest, understood his rights and appeared to be in command of his faculties. The defendant admitted to police he had injured his wife and appeared remorseful. Other evidence indicated that, following a suicide attempt by the defendant a week before the victim's death, the defendant's mother attempted to admit him to the North Georgia Community Mental Health Center. After a brief evaluation by two staff psychiatrists, however, the determination was made that the defendant's needs could best be met on an outpatient basis. The evidence showed at the time of his evaluation the defendant was depressed, but was feeling neither suicidal nor homicidal, and manifested no delusions or hallucinations.

The defendant's attending psychiatrist at Central State Hospital testified that while the defendant was "severely depressed" upon admission, he was not suffering from any mental disorder and, in fact, appeared to be in contact with reality. The doctor stated he could not give a "concrete opinion" as to whether the defendant could distinguish between right and wrong at the time of the crime because the defendant, maintaining he remembered nothing about the murder, could not provide him with information sufficient to form an opinion. The witness offered his general opinion, however, that a person who suffers only from depression is able to distinguish between right and wrong.

Georgia law presumes the sanity of an accused, but this presumption may be rebutted. OCGA § 16-2-3; *Butler v. State*, 252 Ga. 135 (311 SE2d 473) (1984); *Durham v. State*, 239 Ga. 697 (238 SE2d 334) (1977). Insanity is an affirmative defense which the defendant must

prove by a preponderance of the evidence. *Brown v. State*, 250 Ga. 66 (295 SE2d 727) (1982). "[B]ecause jurors are not bound by the opinions on sanity of either lay or expert witnesses, the jury may reject defense testimony on insanity even if uncontradicted; the presumption of sanity does not disappear upon the introduction of evidence to the contrary and may be relied upon by the jury even after the introduction of evidence of insanity." Id. at 71.

After considering the evidence relating to the jury's finding of sanity in the light most favorable to the State, we conclude a rational trier of fact could have found the defendant failed to prove by a preponderance of the evidence that he was insane at the time of the crime. Id. at 71-2. There is no merit to defendant's argument.

2. Upon locating the defendant's abandoned camping gear, police discovered it contained two sleeping bags, some prophylactics and a number of silk undergarments. On cross-examination the defendant stated he had planned a deer hunting trip with the victim's sister and her husband and had packed two sleeping bags so he "could sleep on one and cover up with the other." He denied having any prophylactics in his gear. In rebuttal the State recalled the arresting GBI agent who inventoried the gear to testify that these items were found.

The defendant's contention that the agent's testimony was not offered in rebuttal, but as new evidence, is without merit. *Robinson v. State*, 207 Ga. 337 (61 SE2d 475) (1950). Further, the agent's testimony was relevant to the issues in the case. The State's evidence showed the defendant had renewed his relationship with his ex-wife. Following his arrest the defendant stated to police that the victim, from whom he was separated, was jealous of the other relationship. The State's theory was that this triangular relationship provided the defendant with a motive to kill the victim. The testimony that these items were found was relevant as evidence of defendant's relationship to his ex-wife.

3. In its original charge the trial court instructed the jury that "mental illness" could include "having a state of significantly sub-average general intellectual functioning existing concurrently with defects of adaptive behavior which originated in the developmental period." OCGA § 17-7-131 (a) (2).[1] At the jury's request the trial court re-charged the law of mental illness, but omitted the above-quoted

---

[1] The definition of "mentally ill" as charged by the trial court in this case is taken directly from OCGA § 17-7-131 (a) (2): " 'Mentally ill' means having a disorder of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality or ability to cope with the ordinary demands of life *or* having a state of significantly sub-average general intellectual functioning existing concurrently with defects of adaptive behavior which originates in the developmental period. However, the term 'mental illness' shall *not* include a mental state manifested only by repeated unlawful or antisocial conduct." (Emphasis supplied.)

portion of the statute. Defendant's complaint that this omission constitutes reversible error is without merit as there is no evidence in the record that the defendant possesses "significantly sub-average intellectual functioning." That the defendant may have initially benefited from a charge to which he was not entitled does not entitle him to this same benefit on re-charge. Further the record shows that following the re-charge defendant stated, upon inquiry by the court, that he had no objections to the re-charge as given.

4. The trial court charged the jury on the law of felony murder, aggravated assault and simple assault. The trial court then repeated the definition of felony murder. Defendant complains the jury may have been influenced by the repetition of the charge of felony murder to convict the defendant of this offense. After examining the entire charge we find no error. As defendant points out, "A mere repetition of a principle of law, while unnecessary, will not work a reversal unless it appears from the charge as a whole that there was such undue emphasis as to result in an unfair statement of the law in relation to the defendant's rights." *Brown v. State*, 142 Ga. App. 247, 248 (235 SE2d 671) (1977). We do not find the trial court's charge unduly prejudiced the defendant's rights.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 19, 1984.

*Oliver & Oliver, William R. Oliver, Robert F. Oliver,* for appellant.

*V. D. Stockton, District Attorney, Michael H. Crawford, Assistant District Attorney, Michael J. Bowers, Attorney General, Paula K. Smith, Staff Assistant Attorney General,* for appellee.

