42003. KEENER v. THE STATE.
(334 SE2d 175)

HILL, Chief Justice.

Michael J. Keener was tried for the murder of his 80-year-old aunt, was found guilty but mentally ill, and was sentenced to life in prison.[1] He appeals.

On the afternoon of January 2, 1984, Mrs. Ola Nicholson went to look in on her neighbor, the victim, Evie Keener, but was greeted at

---

[1] The murder occurred on January 2, 1984, and the defendant was convicted on July 11, 1984. His motion for new trial was filed on August 9, 1984, and the transcript was filed August 24. The motion for new trial was heard and overruled on December 5, 1984. Notice of appeal was filed in the trial court on January 3, 1985, and the record was docketed in this court on January 29, 1985. After briefs were filed, the case was argued on April 9, 1985.

the door by the defendant, a nephew who had lived with the victim for 7 to 8 years. After mumbling something, the defendant said, "I don't know who done it." Mrs. Nicholson then saw the victim lying on the kitchen floor and ran next door to alert the defendant's brother, Steve Keener. Upon gaining entry to the house, Steve observed his aunt's body and ran back to his house for a weapon.[2] Steve then confronted the defendant in his bedroom. As the defendant rose from his bed, Steve Keener wounded him. The defendant told his brother he had to do it because the victim would not leave him alone.

The police and an ambulance were called. The victim had been stomped on the head. The defendant's bloody shoes were found under his bed, but no bloody tracks were found from the kitchen to his bedroom. Forensic tests showed the blood on the shoes was type A, consistent with that of both the victim and the defendant, but hair samples also taken matched that of the victim.

The defendant's defense at trial was insanity. He had a history of chronic schizophrenia dating back to 1962 and had been in and out of Central State Hospital about six times. He was last released from there in June 1982. He, however, continued treatment as an out-patient at the Rabun County Mental Health Center, where his medication was monitored and counseling was provided.

Steve Keener and another brother, Curtis Keener, both testified that they thought their brother was not sane but that he did know the difference between right and wrong. On the night of the murder, the defendant appeared rational to them.

Two experts testified at the trial that the defendant was a chronic schizophrenic and that the main characteristic of this illness was a loss of touch with reality, including at least periods where the patient would not be able to distinguish right from wrong.[3] The defendant told at least one of them that he was not taking his medicine at the time of the incident because his aunt had hidden it. The experts testified as to their opinions that the defendant could not distinguish between right and wrong at the time of the crime. His counselor, however, visited the defendant in jail the day after the incident, at which time the defendant did not appear actively psychotic, but would not talk to the witness.

The state points out that the witnesses who observed the defendant at the time did not describe him as being in a wild or psychotic state and argues that his actions and statements reveal that he knew right from wrong. As noted, the jury found the defendant guilty but mentally ill.

---

[2] The defendant had pled guilty to assaulting the victim several months earlier.
[3] The defendant had been found competent to stand trial by a special jury.

1. The defendant contends that the trial court erred in failing to direct a verdict as to not guilty by reason of insanity and in failing to grant a new trial upon the same ground. He relies upon his mental history and the opinions of the experts. The state relies upon the contemporaneous facts and the observations and opinions of lay witnesses, including the defendant's brothers and his counselor. The evidence as to the defendant's sanity at the time of the murder was in conflict.

For the purpose of determining whether the state or the defendant had the burden of proof as to sanity, we commence by noting that, having been released from Central State Hospital, the defendant was presumed to be sane and had the burden of proof. *Gilbert v. State*, 235 Ga. 501 (220 SE2d 262) (1975); *Brown v. State*, 250 Ga. 66, 70-71 (295 SE2d 727) (1982); *Nelson v. State*, 254 Ga. 611 (331 SE2d 554) (1985); compare *Butler v. State*, 252 Ga. 135, 137-138 (311 SE2d 473) (1984).

In *Moses v. State*, 245 Ga. 180, 181 (263 SE2d 916), cert. den. 449 U. S. 849 (101 SC 138, 66 LE2d 60) (1980), the court said: "Jurors are not bound by the opinions of either lay witnesses or expert witnesses as to the question of sanity and they may rely on the basic presumption existing under our law. [Cits. omitted.] The jury is free to reject expert testimony as to sanity and may find an accused sane even without positive testimony as to sanity." See also *Brooks v. State*, 247 Ga. 744, 745 (279 SE2d 649) (1981).

However, in *Brown v. State*, supra, we recognized that, when the proof of insanity is overwhelming, juries may no longer rely solely on the rebuttable presumption of sanity, and said (250 Ga. at 71): "While it is a jury's function to determine the credibility of witnesses and the probative value of testimony, juries must weigh the evidence and may not arbitrarily ignore it. Insanity may be so clear and the proof so overwhelming that a jury finding of sanity cannot be upheld." We then adopted the following test (250 Ga. at 71-72): "We conclude that an appropriate standard of appellate review of the sufficiency of the evidence with regard to a jury's finding of sanity in a criminal case is whether after reviewing the evidence in the light most favorable to the state, a rational trier of fact could have found that the defendant failed to prove by a preponderance of the evidence that he was insane at the time of the crime."[4]

---

[4] In *Strickland v. Francis*, 738 F2d 1542, 1552 (11th Cir. 1984), a case involving competency to stand trial, the court stated: "It is well established that a factfinder need not adhere to an expert opinion on incompetency if there is reason to discount it. [Cits. omitted.] However, where, as here, the expert testimony so clearly and overwhelmingly points to a conclusion of incompetency, the jury cannot arbitrarily ignore the experts in favor of the observations of laymen." That court went on to list factors which reasonably could lead a factfinder to disregard expert testimony, two of which factors are present here. At least one of the

We find that a reasonable jury was authorized to find that the defendant failed to prove that he did not know the difference between right and wrong by a preponderance of the evidence. *Brown v. State.* Having reviewed the evidence in the light most favorable to the jury's determination, we also find that a rational trier of fact could have found beyond a reasonable doubt that the defendant was guilty of murder but mentally ill. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). We therefore find that the trial court did not err in failing to direct a verdict in defendant's favor and did not abuse its discretion in refusing to grant a new trial.

2. The defendant urges in addition that the guilty but mentally ill statute, OCGA § 17-7-131 (as amended, Ga. L. 1982, p. 1476), is unconstitutional in that it puts the burden on the defendant to prove he is not mentally ill. The law places no burden on a defendant to prove that he is not mentally ill, or that he is guilty but mentally ill. The burden is on the state to prove that the defendant is guilty of the crime charged, including the requisite element of intent, beyond a reasonable doubt. The burden is on the defendant to prove he is not guilty by reason of insanity by a preponderance of the evidence. This latter requirement is constitutional. *Leland v. Oregon,* 343 U. S. 790 (72 SC 1002, 96 LE 1302) (1952); *Rivera v. Delaware,* 429 U. S. 877 (97 SC 226, 50 LE2d 160) (1976); *Patterson v. New York,* 432 U. S. 197 (97 SC 2319, 53 LE2d 281) (1977); *Grace v. Hopper,* 566 F2d 507 (5th Cir. 1978).

It may be that the defendant is arguing that when a defendant defends solely on the basis of insanity at the time of the crime, he necessarily proves that he is guilty but mentally ill if his insanity defense is not accepted by the jury. The same was true before the guilty but mentally ill verdict was authorized, but there is now a category with a name ("guilty but mentally ill") which describes such circumstances. The creation of the category of guilty but mentally ill is not unconstitutional for any reason of which this defendant may complain. *Cooper v. State,* 253 Ga. 736 (5) (325 SE2d 137) (1985). The definition of "mentally ill" is not unconstitutionally vague. *Worthy v. State,* 253 Ga. 661 (6) (324 SE2d 431) (1985).

We take this opportunity, however, to make clear that when the trial court charges the jury on the defense of insanity at the time of the crime, OCGA §§ 16-3-2; 16-3-3, and on guilty but mentally ill at the time of the crime, OCGA § 17-7-131, supra, the trial court must

experts based his opinion on the defendant's statement that he was not taking his medication at the time. Additionally, the contrary lay testimony regarding their observations of the defendant immediately following the murder was entitled to be considered by the jury on the twin questions of whether the defendant was taking his medication and whether he knew the difference between right and wrong.

make clear to the jury in its charge that if they find the defendant did not have the mental capacity to distinguish between right and wrong (or acted because of delusional compulsion), they must find the defendant not guilty by reason of insanity and must not find the defendant guilty but mentally ill. That is to say, if the jury finds the defendant not guilty by reason of insanity, their deliberations must cease, and the jury should not thereafter consider whether the defendant was guilty but mentally ill. A jury is not authorized to find that the defendant did not know right from wrong *and* is guilty but mentally ill. We note that the trial court correctly charged the jury in the case now before us that if they found that the defendant did not have reason sufficient to distinguish between right and wrong that would end their consideration of the case, and we find no constitutional error as the law was applied to this defendant.

3. There was no error in admitting the blood and hair samples collected at the scene of the crime.

4. The defendant complains about four requested charges which were not given by the trial court. No evidence of delusional compulsion was presented at the trial, and there was no error in not giving a charge on this subject. *Graham v. State*, 236 Ga. 378, 382 (223 SE2d 803) (1976). The requested charge on the disposition of the defendant if he were found guilty but mentally ill was irrelevant to the jury's deliberations. *Gibson v. State*, 236 Ga. 175, 176 (223 SE2d 150) (1976).[5] The remaining requests were adequately covered in the trial court's charge as given and we find no error here.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 12, 1985.

*Clay & Russell, R. Bruce Russell, Sr.,* for appellant.

*Michael H. Crawford, District Attorney, Michael J. Bowers, Attorney General, J. Michael Davis, Staff Assistant Attorney General,* for appellee.

---

[5] Effective July 1, 1985, this rule was changed. See Ga. L. 1985, pp. 637, 639.