42363. STROZIER v. THE STATE.
(334 SE2d 181)

WELTNER, Justice.

James Lee Strozier was convicted of murder and sentenced to life imprisonment for killing his wife with a machete.[1]

Strozier followed his estranged wife and their children to Tifton, where he had tried, for several months, to effect a reconciliation. An off-duty police officer, who lived in the apartment above Mrs. Strozier, heard her screaming, saw Strozier striking her with what appeared to be a newspaper, and observed blood on the victim. The of-

---

[1] The offense was committed on July 9, 1984, a verdict of guilty was returned on January 24, 1985, and sentence was entered on January 25, 1985. Notice of appeal was filed on February 20, 1985, the transcript of evidence was certified on April 16, 1985, the appeal was docketed in this court on May 16, 1985, and the case was submitted for decision on June 28, 1985.

ficer notified the police, obtained a revolver, and went downstairs to find Mrs. Strozier lying on the porch covered with blood, her throat slashed. A machete wrapped in newspaper was found beside her. Strozier was standing in the doorway. The officer ordered Strozier to lie face down in the grass until the police arrived.

Medical testimony indicated that the cause of death was a severed artery in the victim's neck.

Strozier testified that he had visited with his children two days before the homicide; that on the day of the event he borrowed his sister's automobile and drove to his wife's apartment; that when she answered the door, she cursed him, walked to the bedroom, returned to the door holding a newspaper behind her back, and then she struck him in the head. He said that the next thing he remembered was seeing his wife lying in a pool of blood.

Strozier testified that the machete belonged to his wife. Strozier's sister testified that she had seen the machete wrapped in a newspaper in her (the sister's) automobile before the homicide.

A psychologist testified for the defense that Strozier's ability to differentiate between right and wrong had been affected at the time of the homicide by his marital difficulties. He admitted, however, that the accuracy of his opinion might be affected by the fact that he did not talk with Strozier until several months after the incident.

Lay persons testified regarding Strozier's behavior on or near the date of the homicide. Officer Weldy stated that Strozier was calm and responded well during their conversation at the police station immediately following his arrest. Ms. Hildebrandt testified that Strozier was cooperative, answered questions freely, and exhibited no bizarre behavior prior to his trial. Natasha Strozier, the victim's daughter, testified that her father's behavior was not unusual when she was with him two days before the incident.

1. Strozier contends that the evidence demanded a finding that he was insane at the time of the homicide.

"We conclude that an appropriate standard of appellate review of the sufficiency of the evidence with regard to a jury's finding of sanity in a criminal case is whether after reviewing the evidence in the light most favorable to the state, a rational trier of fact could have found that the defendant failed to prove by a preponderance of the evidence that he was insane at the time of the crime." *Brown v. State*, 250 Ga. 66, 71-72 (295 SE2d 727) (1982).

"Georgia law presumes the sanity of an accused, but this presumption may be rebutted. OCGA § 16-2-3; *Butler v. State*, 252 Ga. 135 (311 SE2d 473) (1984); *Durham v. State*, 239 Ga. 697 (238 SE2d 334) (1977). Insanity is an affirmative defense which the defendant must prove by a preponderance of the evidence. *Brown v. State*, 250 Ga. 66 (295 SE2d 727) (1982). '(B)ecause jurors are not bound by the

opinions on sanity of either lay or expert witnesses, the jury may reject defense testimony on insanity even if uncontradicted; the presumption of sanity does not disappear upon the introduction of evidence to the contrary and may be relied upon by the jury even after the introduction of evidence of insanity.'" *Murray v. State*, 253 Ga. 90, 91-92 (317 SE2d 193) (1984). "While it is a jury's function to determine the credibility of witnesses and the probative value of testimony, juries must weight the evidence and may not arbitrarily ignore it. Insanity may be so clear and the proof so overwhelming that a jury finding of sanity cannot be upheld." *Brown*, supra at 71. See *Keener v. State*, 254 Ga. 699 (334 SE2d 175) (1985).

The expert acknowledged that the value of his assessment might be affected by his late entry into the matter. The lay witnesses had observed Strozier's behavior on or near the date of the homicide. These are matters that a rational trier of fact might consider in weighing the testimony of the lay witnesses against the testimony of the expert. The proof of insanity was not "so overwhelming that the jury finding of sanity cannot be upheld." *Brown*, supra. Strozier's contention must be rejected.

2. The evidence supports the verdict. *Brown v. State*, supra; *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 12, 1985.

*Mims & Henderson, Larry B. Mims*, for appellant.
*David E. Perry, District Attorney, Michael J. Bowers, Attorney General, Dennis R. Dunn, Staff Assistant Attorney General*, for appellee.