43469. HARRIS v. THE STATE.
(349 SE2d 374)

CLARKE, Presiding Justice.

Darby Harris was tried and convicted of the murder of both his parents and sentenced to consecutive life sentences after a bench trial.[1] The Court found him guilty but mentally ill. Harris told his girl

---

[1] Harris was indicted February 18, 1985, on two counts of murder for the murder of his parents on February 13, 1985. He was tried before a judge alone on August 27 and 28, 1985,

friend that he had killed his parents. He then fled to Jacksonville, Florida, where he turned himself in to police and gave a statement admitting guilt. About thirty minutes after the interview with police began and after appellant had admitted guilt he began to froth at the mouth and had to be taken to a hospital where he was admitted to the psychiatric unit.

1. In his first enumeration of error Harris complained that the court erred in failing to appoint a psychiatrist or psychologist to examine appellant and testify as required by OCGA § 17-7-130.1. The code section provides that "[w]hen notice of an insanity defense is filed, the court shall appoint at least one psychiatrist or licensed psychologist to examine the defendant and to testify at the trial." In the present case the court did order an evaluation prior to trial and even prior to the appellant's notice that he intended to raise a sanity defense. This evaluation was made by a team of psychologists at Central State Hospital headed by Dr. Jerald Lower. Appellant's failure to seek appointment of an independent expert and his use of the court-appointed expert to testify at trial does not constitute error on the part of the court. This enumeration is without merit.

2. The second and third enumerations of error concern the court's failure to conduct a separate hearing into the appellant's competency to stand trial under OCGA § 17-7-130. Although appellant, who made no special plea of incompetency to stand trial, does not argue that he was entitled to a special jury trial on the issue of insanity, he does contend that the court erred in not granting him a hearing. The real question raised here is whether the trial court must hold a separate hearing on competency in the absence of a special plea of incompetency by a defendant when the trial court has been concerned enough about the issue of competency to independently order an evaluation of the defendant. In *Baker v. State,* 250 Ga. 187 (297 SE2d 9) (1982), we held that even if a defendant makes no motion for a hearing on the issue of competency if the evidence indicates that there is an issue of competency, the court must inquire into it. This is so because the accused has a constitutional right not to be put on trial while incompetent. *Drope v. Missouri,* 420 U. S. 162 (95 SC 896, 43 LE2d 103) (1975); *Pate v. Robinson,* 383 U. S. 375 (86 SC 836, 15 LE2d 815) (1966). In *Baker,* we held that the trial court erred in failing to hold a hearing to determine competency once the issue was raised. The state argued that in fact evidence of competency was brought out at trial, but we found that the only evidence at trial was

found guilty but mentally ill on both counts of murder and sentenced August 28 to two life sentences to run concurrently. He filed a motion for new trial on September 23, 1985. The motion was denied March 19, 1986. The transcript was certified April 21, 1986. The case was docketed in this court on April 30, 1986, and submitted for decision on June 13, 1986.

that he was incompetent. The present case is distinguishable in that respect from *Baker* because Dr. Marvin Long, the state's psychologist, testified that Harris could cooperate with his lawyer to some extent and could in a general way understand the proceedings. He indicated that appellant's illness was under control by drugs at the time of trial. Dr. Jerald Lower, the court-appointed psychologist, testified that at the time of his report to the court, he felt appellant was competent to stand trial. While there was testimony that he was competent to stand trial, there was no testimony that he was incompetent. The question then becomes whether when there has been testimony by two experts as to a defendant's competency the absence of specific findings by the court necessitates at the very least a post-appeal hearing on the question of competency. We find that it does not. Here, the trial court sua sponte appointed an expert to examine the appellant prior to trial. That expert, as well as the expert retained by the state obviously examined appellant to determine competency as well as his sanity at the time of the acts of murder for which he was tried. The fact that the court allowed the trial to go forward after testimony concerning appellant's competency is in effect a sub silentio finding that he was competent. We conclude that there was a sufficient inquiry into the question of appellant's competency. This is particularly true since this was a bench trial.

3. In his fourth enumeration of error appellant complains of the court's admitting testimony of the state's expert concerning an admission by appellant that he committed the murders. He was given no *Miranda* warnings before talking with the psychologist. The patient-psychologist privilege does not apply where, as here, the defense is insanity and the statement in question is made during an evaluation by a court-appointed psychologist. *Pierce v. State*, 243 Ga. 454 (254 SE2d 838) (1979). The same is true if the examining psychologist is the state's psychologist. There is a question, however, of the appellant's right against self-incrimination.

In *Estelle v. Smith*, 451 U. S. 454 (101 SC 1866, 68 LE2d 359) (1981), the United States Supreme Court found that admission of a psychiatrist's testimony on the issue of a defendant's future dangerousness at the penalty phase of a capital case when the testimony was the result of an in-custody court-ordered competency examination infringed the defendant's Fifth Amendment constitutional guarantee against self-incrimination. The Court distinguished a situation in which the application of the psychiatrist's findings was confined to a determination of the issue of competency. The court found no Fifth Amendment issue would arise in that situation. Similarly, a defendant who enters a plea of not guilty by reason of insanity may be required to submit to a sanity examination by the state's psychiatrist. The Court held that "[a] criminal defendant, who neither initiates a psy-

chiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding." 451 U. S. at 468. Although the Court also found that the defendant's Sixth Amendment right to counsel had been violated because he was not allowed to consult with counsel concerning whether he should submit to the examination, the Court specifically noted that the Court of Appeals had not found any right to have counsel present during the examination. 451 U. S. at 471, n. 14. See also *United States v. Cohen*, 530 F2d 43 (5th Cir. 1976), cert. denied, 429 U. S. 855.

It is not necessary to reach the question whether the court erred in admitting the testimony by the state's expert that appellant admitted the murders. Even if the admission of this evidence had been error it would have been harmless error because there was testimony that appellant had confessed to the murders two times in addition to his statements to the psychologist and harmless because the insanity defense here presupposes an admission of the act. Further, the court announced before admitting the testimony that it would be admitted only for the purpose of determining appellant's condition and not for the truth of the statement in question. The court in a bench trial is deemed to have considered only competent evidence. *Simmons v. State,* 249 Ga. 860 (295 SE2d 84) (1982).

4. In his fifth enumeration of error appellant claims that his statement to police in Jacksonville, Florida, was not voluntary because after approximately thirty minutes of questioning appellant began to froth at the mouth and had to be taken to the emergency room of the hospital from which he was admitted to the psychiatric unit.

The court held a *Jackson v. Denno* hearing and concluded that the statement taken before the onset of the illness was voluntary. This conclusion was reached after testimony by the detective who took the statement that the appellant appeared to understand his *Miranda* rights and appeared to be rational and lucid at the time of the statement. Even highly disturbed and psychotic persons are capable of periods of understanding and lucidity, *Nelms v. State*, 255 Ga. 473 (340 SE2d 1) (1986), and we will not overturn the trial court's finding of voluntariness unless it is clearly erroneous *Mullinax v. State,* 255 Ga. 442 (339 SE2d 704) (1986); *Berry v. State,* 254 Ga. 101 (326 SE2d 748) (1985).

5. Appellant's sixth enumeration of error concerns his claim that the trial court erred in requiring that he establish his insanity by a preponderance of the evidence. "Insanity is an affirmative defense which the defendant must prove by a preponderance of the evidence." *Murray v. State,* 253 Ga. 90, 91-92 (317 SE2d 193) (1984); *Brown v. State,* 250 Ga. 66 (295 SE2d 727) (1982).

6. Finally, the appellant argues that there was not enough evidence so that ". . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). He contends that all of the evidence bearing on his sanity indicated that he was insane at the time of the commission of the crime and that there was no evidence to the contrary. He asserts that this requires a finding of not guilty by reason of insanity.

Dr. Long, the state's psychologist, testified that in his opinion appellant suffered from a delusional psychosis at the time of the murders and ". . . suffered from an inability to control his actions and behavior in a rational manner." When asked if appellant was able to distinguish between right and wrong on the date of the crime, Dr. Long answered, "I doubt it seriously." In response to a question as to whether appellant was legally sane, he answered, "I don't think so. I feel like he was operating under delusion of psychotic nature that interfered with his control of his behavior and actions."

Dr. Lower, the court-appointed psychologist, testified that he did not believe that appellant had the ability to know right from wrong on the day of the crime. He also testified the appellant's belief that his father was out to harm him was a type of delusion.

When asked by the court whether in his opinion appellant was not guilty by reason of insanity or guilty but mentally ill, Dr. Lower stated that he thought appellant fit the category of not guilty by reason of insanity.[2]

In explaining his verdict of guilty but mentally ill the trial judge said that the appellant's actions in telling his girl friend that he had killed his parents and telling her where the bodies were located plus his conversation with his girl friend's father in which he tried to borrow his gun when combined with his turning himself into a security guard in Jacksonville, Florida, and giving a statement to police were not the acts of an insane person.

"We conclude that an appropriate standard of appellate review of the sufficiency of the evidence with regard to a jury's finding of sanity in a criminal case is whether after reviewing the evidence in the light most favorable to the state, a rational trier of fact could have found that the defendant failed to prove by a preponderance of the evidence that he was insane at the time of the crime." *Brown v. State*, 250 Ga., supra at 71-72.

"Georgia law presumes the sanity of an accused, but this presumption may be rebutted. OCGA § 16-2-3; *Butler v. State*, 252 Ga.

---

[2] There was no objection to this testimony and we do not reach the question of its admissibility.

135 (311 SE2d 473) (1984); *Durham v. State,* 239 Ga. 697 (238 SE2d 334) (1977). Insanity is an affirmative defense which the defendant must prove by a preponderance of the evidence. *Brown v. State,* 250 Ga. 66 (295 SE2d 727) (1982). '(B)ecause jurors are not bound by the opinions on sanity of either lay or expert witnesses, the jury may reject defense testimony on insanity even if uncontradicted; the presumption of sanity does not disappear upon the introduction of evidence to the contrary and may be relied upon by the jury even after the introduction of evidence of insanity.' Id. at 71." *Murray v. State,* 253 Ga., supra at 91-92. "While it is a jury's function to determine the credibility of witnesses and the probative value of testimony, juries must weigh the evidence and may not arbitrarily ignore it. Insanity may be so clear and the proof so overwhelming that a jury finding of sanity cannot be upheld." *Brown,* supra at 71. See *Strozier v. State,* 254 Ga. 712, 713, 714 (334 SE2d 181) (1985); *Keener v. State,* 254 Ga. 699 (334 SE2d 175) (1985).

The expert testimony in this case appears to support a finding of not guilty by reason of insanity. The real question is whether it requires such a finding. Dr. Long equivocated on the issue of knowing right from wrong when he said, "I doubt it seriously." Relating to the question of delusion, he used such phrases as "I don't think so" and "I feel like." Both of those phrases were in response to a question regarding whether appellant was legally sane. This question, of course, calls for a conclusion of the law and this places some doubt upon the weight which should be given to the answer. Dr. Lower also dealt in the area of a conclusion of the law by stating that he thought appellant fit the category of not guilty by reason of insanity.

Evidence conflicting with the conclusions reached by the experts includes the presumption of sanity but does not stop there. Shortly after the death of the victims, the appellant told his girl friend he was afraid he would hurt her which is at least an indication that he understood that hurting someone is wrong. Shortly after this he fled to Florida and flight constitutes evidence which a rational finder of fact could consider as a factor indicating that appellant knew that his actions were wrong. *Milam v. State,* 255 Ga. 560 (341 SE2d 216) (1986).

Construing the evidence in a light most favorable to the verdict, we find a rational trier of fact could have found that the defendant failed to prove by a preponderance of the evidence that he was insane at the time of the crime. *Brown v. State,* supra. This leads to the conclusion that also construing the evidence in a light most favorable to the verdict, we find a rational trier of fact could have found appellant guilty but mentally ill beyond a reasonable doubt. *Jackson v. Virginia,* supra.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 28, 1986.

*Kight, Larsen & Flanders, H. Gibbs Flanders,* for appellant.
*Beverly B. Hayes, District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Assistant Attorney General,* for appellee.