**Thomas A. FULGHUM, Petitioner–Appellant,**

v.

**Paul FORD, Respondent–Appellee.**

**No. 87–8563.**

United States Court of Appeals, Eleventh Circuit.

Aug. 3, 1988.

David A. Cook, Decatur, Ga., for petitioner-appellant.

Mary Beth Westmoreland, Atlanta, Ga., for respondent-appellee.

Before JOHNSON and HATCHETT, Circuit Judges, and ESCHBACH *, Senior Circuit Judge.

JOHNSON, Circuit Judge:

This is an appeal from a denial of habeas relief, 28 U.S.C.A. § 2254, for Georgia inmate Thomas A. Fulghum. We affirm.

## I. FACTS

On July 13, 1979, Fulghum was found guilty of malice murder and sentenced to life imprisonment. Fulghum appealed on

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

two issues: sufficiency of evidence for guilt and failure to direct a verdict of not guilty by reason of insanity. His conviction and sentence were affirmed by the Supreme Court of Georgia. *Fulghum v. State,* 246 Ga. 184, 269 S.E.2d 455 (1980). On October 7, 1986, Fulghum filed a federal habeas petition alleging overwhelming evidence of delusional compulsion and challenging a jury instruction on implied malice. Fulghum subsequently filed a request for discovery on the belief that members of his jury thought he was insane but found him guilty in order to keep him out of society. On June 22, 1987, the district court denied the petition on the grounds that there was sufficient evidence for the verdict and the jury charge was not impermissibly burden shifting. The discovery request was not ruled upon.

Fulghum murdered Dale Pirnie on July 9, 1979. Around 10:00 p.m. that night Fulghum was discovered "just standing" outside the apartment complex and clutching a quart jar containing one of Pirnie's internal organs. He was covered with blood. He requested an ambulance and said that "something bad happened." Fulghum told the ambulance attendant that "pain proves one's love for God," referring to the finger he had severed from his left hand. Fulghum did not respond to Officer Thurman Williams' questions, but Officer Williams followed the trail of blood to Pirnie's body.

Blood was scattered all over the apartment, and a sliding glass door was broken. Officer Williams found Pirnie in the bedroom. She lay disemboweled of all her organs from her genital area to her windpipe. A twelve-inch butcher knife was stuck in the unclothed upper part of her body. Some of Pirnie's internal organs were found in the bathtub. Other pieces were on the floor of the kitchen and living room. A plate with food had been placed six to eight inches from Pirnie's head. Two days later, Fulghum's finger was found in the apartment. The autopsy showed that forty-four separate stab wounds in the trunk and chest caused Pirnie's death. It could not be determined whether the stab wounds had been made with deliberation or frenzy. It was estimated to have taken fifteen minutes to one hour to stab the victim and remove the organs.

Sheila Spencer, the ambulance attendant, testified that when she arrived Fulghum was "strictly twenty-four," meaning crazy, and in shock. An apartment resident, Richard Napolitano, testified that at the time Fulghum "seemed coherent and then incoherent." Dr. Lloyd Baccus investigated Fulghum the day after his arrest. Dr. Baccus testified that Fulghum told him that Pirnie's face had turned into Satan and that Pirnie was possessed by Satan. Satan would return to earth unless certain body organs were removed. His left hand was evil, while his right hand was pure. God told him to sever his finger because one must receive scars when one does battle with Satan. The organ in the jar was a trophy of his successful battle against Satan.

Dr. Baccus diagnosed Fulghum as a chronic paranoid schizophrenic who suffered delusional compulsions triggered by religious stimuli. He testified that Fulghum was under a delusional compulsion ("psychotic decompensation") at the time of the murder. Believing that God willed him to kill Pirnie, Fulghum thought he had done the right thing. Dr. Baccus said that Fulghum was incurable, and that one could be competent and yet paranoid schizophrenic. On cross-examination, Dr. Baccus said Fulghum probably would not have killed if police had been present and that Fulghum was intelligent enough to give a history suggestive of mental illness. On redirect, he said Fulghum's delusions depended on religious stimuli. He also said that Fulghum was sincere in his beliefs and could not be so deceptive that his diagnosis would be incorrect.

Dr. Baccus' diagnosis was corroborated by Fulghum's history. Dr. David Moore had treated Fulghum during three separate hospitalizations. Dr. Moore diagnosed Fulghum as an incurable, long standing, severe paranoid schizophrenic. He testified about previous psychotic episodes: attempts to gouge out his eyes, attempts to

shave his head, declarations that he was the anti-Christ, and an attempted suicide as a command from God. During one hospitalization Fulghum was restrained the entire period to keep from gouging out his eyes. Dr. Moore had last seen Fulghum eighteen months prior to the murder.

Fulghum's family testified that he had been normal until he became obsessed with religion in 1975. They substantiated reports of his psychotic episodes. Fulghum had tried violently to shake Satan out of his father, had stuck his fingers back into his eyes to gouge them out, and had jumped from a moving automobile in a suicide attempt.

The state presented additional evidence. C.M. Hufstetler, an assistant watch commander at Fulghum's jail, testified that on his regular rounds he never saw Fulghum act in an unusual manner. James Gordon, a deputy sheriff, testified he had seen no unusual behavior during a period of two to three months after the crime. The state did not present any expert testimony.

## II. EVIDENCE OF INSANITY

In ascertaining criminal intent, Georgia recognizes two forms of insanity: the right-wrong test and the delusional compulsion test. Fulghum raised a delusional compulsion defense at trial. Fulghum sought to show that his murder of Pirnie resulted from a "delusional compulsion ... which overmastered his will to resist committing the crime." O.C.G.A. § 16–3–3. To satisfy the delusional compulsion test, a defendant must prove that (1) he labored under the delusion; (2) the crime was connected to the delusion; and (3) the delusion would have justified the act. *Stevens v. State*, 256 Ga. 440, 350 S.E.2d 21 (1986) (husband's murder of wife "justified" by delusion of battling Satan).

As an affirmative defense in Georgia, proof of insanity is a burden borne by the defendant. Proof of sanity is explicitly not an element of the prosecution's case. *Spivey v. State*, 253 Ga. 187, 319 S.E.2d 420 (1984). A Georgia jury may accept or reject lay or expert witness testimony on insanity even if uncontradicted, *Murray v.*

*State*, 253 Ga. 90, 317 S.E.2d 193 (1984), or even in the absence of testimony of sanity, *Brooks v. State*, 247 Ga. 744, 279 S.E.2d 649 (1981). *Brooks* explicitly overruled *Handspike v. State*, 203 Ga. 115, 45 S.E.2d 662 (1947), thus clearly allowing the jury to rely on the state's presumption of sanity to reach a verdict of guilt.

Fulghum argues that the evidence of his insanity is so overwhelming as to rebut the presumption of sanity and to cause a reasonable doubt about his specific intent to murder Pirnie. The state argues that the evidence was sufficient for a rational trier of fact to have found Fulghum sane at the time of the murder. Crucial to the resolution of this issue is a determination of the proper standard of review.

Fulghum would have this Court review his insanity defense in accordance with the four prongs of *Strickland v. Francis*, 738 F.2d 1542 (11th Cir.1984). *Strickland* found evidence of incompetency to stand trial on the basis of four factors: "(1) the correctness or adequacy of the factual assumptions on which the expert opinion is based; (2) possible bias in the expert's appraisal of the defendant's condition; (3) inconsistencies in the expert's testimony or material variations between experts; and (4) the relevance and strength of the contrary lay testimony." 738 F.2d at 1552. *Strickland* is, however, not the right mold for this case.

*Strickland* relied on *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103 (1975), which held that "a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to trial." *Strickland* also relied on *Pate v. Robinson*, 383 U.S. 375, 385, 86 S.Ct. 836, 842, 15 L.Ed.2d 815 (1966), which required state evidentiary hearings whenever there was a bona fide doubt about competence. Ultimately *Strickland* relied on the due process clause in crafting a standard that would vigilantly assure competency to stand trial.

Admittedly, *Strickland* has a surface resemblance to this case. Competency to stand trial and the insanity defense both focus on the defendant's state of mind. Proof of insanity in a Georgia criminal trial is, however, governed by a different due process threshold, one articulated in *Patterson v. New York*, 432 U.S. 197, 208–10, 97 S.Ct. 2319, 2326–27, 53 L.Ed.2d 281 (1977):

> Due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person.... To recognize at all a mitigating circumstance does not require the State to prove its nonexistence in each case in which the fact is put in issue.... We thus decline to adopt a constitutional imperative, operative countrywide, that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of the accused.

■ Recognition of state-designated affirmative defenses is, however, not automatic. "[T]here are obviously constitutional limits beyond which the States may not go [in labeling affirmative defenses]." *Patterson*, 432 U.S. at 210, 97 S.Ct. at 2327. A clear limit is that, in accordance with the defendant's presumption of innocence, the state must carry the burden of proving *"every fact* necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). Thus our due process concern in this case is to assure that the affirmative defense of insanity by delusion compulsion is not only nominally but also substantively a nonessential element of Georgia murder. *Mullaney v. Wilbur*, 421 U.S. 684, 699, 95 S.Ct. 1881, 1889, 44 L.Ed.2d 508 (1975).

The propriety of presuming sanity has been previously addressed. The Supreme Court's first imprimatur for affirmative defenses of insanity was given in *Leland v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952). In *Patterson,* the Supreme Court expressly rejected the contention that *Winship* and *Mullaney* had over-ruled *Leland.* Instead, the Supreme Court repeated the principle that "[o]nce the facts constituting a crime are established beyond a reasonable doubt, based on all the evidence including the evidence of the defendant's mental state, the State may refuse to sustain the affirmative defense of insanity unless demonstrated by a preponderance of the evidence." 432 U.S. at 206, 97 S.Ct. at 2325. A more recent articulation by our predecessor Court of the constitutional propriety of bestowing defendants with the burden of proving insanity appears in *Holloway v. McElroy*, 632 F.2d 605, 635 (5th Cir.1980). In the course of invalidating Georgia's practice of placing the burden of proving self-defense on the defendant, *Holloway* presented Georgia's insanity defense as a valid counterexample.

■ Fulghum asserts that we are bound by the proposition in *Brock v. United States*, 387 F.2d 254, 257 (5th Cir.1967), that once a presumption of insanity is rebutted, "[s]anity then becomes an element of the offense charged and must be proved beyond a reasonable doubt." But *Brock* has been overtaken. *Brock* relied on *Davis v. United States*, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895), which was effectively overruled by *Patterson* in upholding *Leland.* Given that federal habeas claims "must be gauged in the light of the applicable [state] law defining the element," *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560 (1979), we see no constitutional due process deficiency that would hinder our recognition of Georgia's presumption of sanity.

■ By Georgia law, therefore, our review of Fulghum's delusional compulsion defense is a review of the evidence supporting an affirmative defense. Given Georgia's presumption of sanity, we consider "whether after reviewing the evidence in the light most favorable to the state, a rational trier of fact could have found that the defendant failed to prove by a preponderance of the evidence that he was insane at the time of the crime." *Brown v. State*, 250 Ga. 66, 295 S.E.2d 727, 733 (1982); *cf. Jackson*, 443 U.S. at 324, 99 S.Ct. at 2791, ("[w]hether, after reviewing the evidence in

the light most favorable to the prosecution, *any* rational trier of fact could find the essential elements of the crime beyond a reasonable doubt").

The state offers the following evidence of sanity: Fulghum asked for an ambulance, Fulghum said something bad happened, an expert testified that Fulghum may not have committed the murder if police had been present, Fulghum was intelligent enough to feign mental illness, and two jailers testified that Fulghum behaved normally while incarcerated.[1] In accordance with our standard of review, we take the facts in a light most favorable to the state. We conclude that a rational trier of fact could have found that Fulghum did not prove by a preponderance of the evidence that his will was so overmastered that he was unable to refrain from committing the murder.

## III. IMPLIED MALICE INSTRUCTION

◾ Under Georgia law, malice, express or implied, is absolutely essential to a conviction for murder. *Elder v. State*, 212 Ga. 705, 95 S.E.2d 373 (1956); *see also Lamb v. Jernigan*, 683 F.2d 1332, 1337 (11th Cir. 1982). Georgia divides the burden of proving malice as follows: "The burden of producing some evidence of provocation is on the defendant only after the State shows circumstance from which malice may be implied, and the ultimate burden of proving malice beyond a reasonable doubt is on the State." *Davis v. State*, 237 Ga. 279, 227 S.E.2d 249, 250 (1976). Although the ultimate burden is on the state, malice is presumed in a Georgia homicide unless shown

to the contrary. *Wiggins v. State*, 221 Ga. 609, 146 S.E.2d 294 (1965). The jury in this case was accordingly instructed that "[m]alice shall be implied where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart."

Fulghum argues that the mandatory nature of the presumption unconstitutionally shifted the state's burden of proving an essential element of his murder conviction. This Circuit has previously considered the identical jury charge and held that the charge alone is constitutionally infirm. *Lamb v. Jernigan*, 683 F.2d 1332 (11th Cir.1982), *cert. denied*, 460 U.S. 1024, 103 S.Ct. 1276, 75 L.Ed.2d 496 (1983). *Lamb*, however, also concluded that the malice charge did not shift the burden.

*Lamb* interpreted the malice instruction as directing the jury that "the finding of malice must often be based entirely on circumstantial evidence—that it is not entitled to refuse to find malice solely because direct evidence of malicious intent is lacking." 683 F.2d at 1340. Therefore *Lamb* looked to the accompanying instructions on circumstantial evidence to determine if the instructions as a whole lessened the reasonable-doubt burden of the prosecution. The *Lamb* Court held that "strong" circumstantial evidence instructions preserved the full burden of the prosecution. *Id; accord Humphrey v. Boney*, 785 F.2d 1495 (11th Cir.1986); *Jarrell v. Balkcom*, 735 F.2d 1242 (11th Cir.1984); *see also Francis v. Franklin*, 471 U.S. 307, 318–19, 105 S.Ct. 1965, 1973, 85 L.Ed.2d 344 (1985) ("[T]he jury charge taken as a whole ... explained

---

1. This evidence sufficed for the Georgia Supreme Court to conclude that:

   [A]ppellant realized his conduct was wrong and against the laws of the state. The criteria necessary to support a defense of delusional compulsion is not shown by the evidence.... [T]he evidence viewed in the light most favorable to the verdict would enable a rational fact finder to find the appellant guilty of murder beyond a reasonable doubt.

   269 S.E.2d at 456–57. Although apparently relied upon by the Georgia Supreme Court, Fulghum's statement that something bad happened does not disprove delusional compulsion because the evidence instead goes to the right-wrong test of insanity. In *Stevens v. State*, 350

   S.E.2d at 23, a unanimous Georgia Supreme Court did not accept post-crime acts of wiping blood from windows, hiding a blood stained shirt, and inquiring about the death penalty as evidence undermining the delusional compulsion defense. The *Stevens* court held that the evidence would have gone against the right-wrong test, O.C.G.A. § 16–3–2, and did not detract from the overwhelming evidence of delusion compulsion. Although it is not our prescribed role on federal habeas review to correct erroneous applications of Georgia law by Georgia courts, *United States v. Baldi*, 192 F.2d 540, 544 (3d Cir.1951), we base our holding only on evidence disproving delusional compulsion.

the proper allocation of burdens with sufficient clarity that any ambiguity in the particular language challenged could not have been understood by a reasonable juror as shifting the burden of persuasion.").

We compare this case to *Lamb* as binding precedent. The court in this case gave the following jury instructions on circumstantial evidence:

Now there are two kinds of evidence. I charge you that direct evidence is that which immediately points to the question at issue. Indirect or circumstantial evidence is that which only tends to establish the issue by proof of various facts, sustaining by their consistency the hypothesis claimed. To warrant a conviction upon circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused.

These instructions are practically verbatim those deemed in *Lamb* to be sufficient to cure any ambiguity as to the state's burden of proving malice beyond a reasonable doubt. Following *Lamb*, the implied malice instruction did not impermissibly shift the burden of proof in this case.

## IV. DISCOVERY REQUEST

After filing his habeas petition, Fulghum asked the district court for permission to invoke the discovery process. Fed.R.Cr. 6. The request was based on an offer of proof that two of the twelve jurors had stated their belief to Fulghum's counsel that Fulghum was insane at the time of the murder, but they had reached the guilty verdict because they feared a verdict of not guilty by insanity would have been less effective in assuring Fulghum's removal from society. The state objected to the request, but it was never ruled upon by the district court.

Our predecessor Court held that "[t]he possibility that the jury misunderstood or even intentionally misapplied the law, however, does not warrant reversal of the conviction." *United States v. D'Angelo*, 598 F.2d 1002, 1003 (5th Cir.1979). Since then this Court has said that "post-decision statements by a judge or juror about his mental processes in reaching decision [sic] may not be used as evidence in a subsequent challenge to the decision." *Proffitt v. Wainwright*, 685 F.2d 1227, 1255 (11th Cir.1982). Nor does this case fit into the exception recognized by Fed.R.Evid. 606(b): "A juror may testify concerning any mental bias in matters unrelated to the specific issues that the juror was called upon to decide and whether extraneous prejudicial information was improperly brought to the juror's attention." *Rushen v. Spain*, 464 U.S. 114, 121 n. 5, 104 S.Ct. 453, 457 n. 5, 78 L.Ed.2d 267 (1983).

As the discovery request goes to neither useful nor permissible ends, it should not be granted.

## V. CONCLUSION

For the foregoing reasons, the decision of the district court is AFFIRMED.