## 44454. HUNTER v. THE STATE.
(361 SE2d 787)

MARSHALL, Chief Justice.

The appellant was indicted under OCGA § 16-6-4 on charges of child molestation, and he was also indicted under OCGA § 16-12-103 (a)(1) on charges of exhibiting to a minor a motion picture depicting sexually explicit nudity and sexual conduct harmful to minors. The jury was unable to reach a unanimous verdict on the child-molestation charge, and a mistrial was declared with respect thereto. However, the appellant was convicted of the other charge. He appeals his conviction to this court, challenging the constitutionality of the statutory provisions under which he was convicted. For reasons which follow, we reverse.

1. OCGA §§ 16-12-102; 16-12-103; and 16-12-104 were amended by Section 3 of Georgia Laws 1984, pp. 1495, 1496 et seq. See *American Booksellers Assn., Inc. v. Webb,* 590 FSupp. 677, 688 (N.D. Ga. 1984) (referred to as *Webb I*). See also *American Booksellers Assn., Inc. v. Webb,* 744 F2d 784 (11th Cir. 1984); *American Booksellers Assn., Inc. v. Webb,* 254 Ga. 399 (329 SE2d 495) (1985); *American Booksellers Assn., Inc. v. Webb,* 643 FSupp. 1546 (N.D. Ga. 1986) (referred to as *Webb II*).

As recognized in *Webb I,* 590 FSupp., supra at p. 687, § 3 of the 1984 Act is divisible into five component parts.

(1) OCGA § 16-12-103 (a),[1] which, as previously stated, is the statutory provision under which the appellant in the present case was convicted, is the *distribution* component, and it prohibits any person from selling or otherwise furnishing to a minor any variously described materials that are sexually explicit and "harmful to minors."

(2) OCGA § 16-12-103 (b)[2] is the *exhibition* component, and this

---

[1] OCGA § 16-12-103 (a) is quoted in full in Division 2, infra.
[2] OCGA § 16-12-103 (b) provides, "It shall be unlawful for any person knowingly to sell

provision generally prohibits any person from allowing a minor to enter premises whereon there is exhibited a motion picture or other presentation which is sexually explicit and "harmful to minors."

(3) OCGA § 161-12-103 (e)[3] is the *display* component, and this provision makes it unlawful for any person to knowingly display in public at newsstands or any other business or commercial establishment or at any other public place frequented by minors, any variously described written or pictorial material which is sexually explicit and "harmful to minors."

(4) OCGA § 16-12-104[4] is the *exemption* component, and this provision states that § 16-12-103 shall not apply to any public library or any other library operated as part of any school, college, or university.

(5) OCGA § 16-12-102[5] is the *definition* component, and this provision defines, among other things, the term "harmful to minors," within the meaning of the prior statutory components.

2. As amended by the 1984 Act, § 16-12-103 (a), the *distribution* component, provides that "[i]t shall be unlawful for any person knowingly to sell or loan for monetary consideration or otherwise furnish or disseminate to a minor: (1) Any picture, photograph, drawing, sculpture, motion picture film, or similar visual representation or image of a person or portion of the human body which depicts sexually explicit nudity, sexual conduct, or sadomasochistic abuse and which is harmful to minors."

Under OCGA § 16-12-102 (1), the *definition* component, " 'harmful to minors' means that quality of description or representation, in

---

or furnish to a minor an admission ticket or pass or knowingly to admit a minor to premises whereon there is exhibited a motion picture, show, or other presentation which, in whole or in part, depicts sexually explicit nudity, sexual conduct, or sadomasochistic abuse and which is harmful to minors or exhibit any such motion picture at any such premises which are not designed to prevent viewing from any public way of such motion picture by minors not admitted to any such premises."

[3] OCGA § 16-12-103 (e) provides, "It shall be unlawful for any person knowingly to exhibit, expose, or display in public at newsstands or any other business or commercial establishment or at any other public place frequented by minors or where minors are or may be invited as part of the general public: (1) Any picture, photograph, drawing, sculpture, motion picture film, or similar visual representation or image of a person or portion of the human body which depicts sexually explicit nudity, sexual conduct, or sadomasochistic abuse and which is harmful to minors; or (2) Any book, pamphlet, magazine, printed matter however reproduced, or sound recording which contains any matter enumerated in paragraph (1) of this subsection, or explicit and detailed verbal descriptions or narrative accounts of sexual excitement, sexual conduct, or sadomasochistic abuse and which, taken as a whole, is harmful to minors."

[4] OCGA § 16-12-104 provides, "The provisions of Code Section 16-12-103 shall not apply to any public library operated by the state or any of its political subdivisions nor to any library operated as a part of any school, college, or university."

[5] OCGA § 16-12-102 (1) contains the statutory definition of "harmful to minors," and a full citation of this statutory provision is found in Division 2, infra.

whatever form, of nudity, sexual conduct, sexual excitement, or sado-masochistic abuse, when it: (A) Taken as a whole, predominately appeals to the prurient, shameful, or morbid interest of minors; (B) Is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable material for minors; and (C) Is, when taken as a whole, lacking in serious literary, artistic, political, or scientific value for minors."

The foregoing definition of "harmful to minors" "is based directly on the definition contained in the New York statute upheld by the Supreme Court in *Ginsberg v. New York*, 390 U. S. 629 (88 SC 1274, 20 LE2d 195) (1968), as modified in light of the three-part test of obscenity announced by the Court in *Miller v. California*, 413 U. S. 15 (93 SC 2607, 37 LE2d 419) (1973)." (Footnote omitted.) *Webb I*, supra, 590 FSupp. at p. 688. Under the *Miller* obscenity test, a work may not be judged obscene unless the work: (1) Taken as a whole, appeals to prurient interest in sex; (2) Portrays, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (3) Taken as a whole, does not have serious literary, artistic, political, or scientific value. See *Pope v. Illinois*, ___ U. S. ___ (Docket No. 85-1973; decided May 4, 1987). The first and third prongs of the *Miller* test require the work to be viewed "as a whole," whereas the second prong does not. *American Booksellers Assn., Inc. v. Webb*, 590 FSupp., supra at p. 688. And the first and second prongs of the *Miller* test are decided with reference to "contemporary community standards," whereas the third prong is decided with reference to whether an "ordinary member of any given community" would find serious value in the allegedly obscene material. *Pope v. Illinois*, supra.

The first and third prongs of § 16-12-102 (1) require the work to be viewed "as a whole," and the second prong requires the adult community to be viewed "as a whole" in determining standards in the adult community with respect to what is suitable for minors.

3. In this case, the § 16-12-103 (a) (1) charge against the appellant was based on his exhibiting to a minor an allegedly pornographic motion picture. The jury was allowed to view a videotape of this motion picture, which was found during a search of the appellant's home. However, at some point during the showing of this film, defense counsel stipulated that the film was sexually explicit, and the remainder of the film was not shown to the jury.

As a result of this truncation of the jury's view of the film, we conclude that there was insufficient evidence under which the jury could have found the appellant guilty of this charge. As previously stated, in order to be adjudged obscene under § 16-12-103 (a)(1), the work must depict sexually explicit nudity *and* be harmful to minors; in order to be adjudged harmful to minors, the work must meet the three-part test set out in subsections (A), (B), and (C) of § 16-12-102

(1); in order to determine whether the work meets the tests set out in subsections (A) and (C), the work must be viewed "as a whole." Accord *New York v. P. J. Video, Inc.*, 475 U. S. ___ (106 SC 1610, 89 LE2d 871) (1986).

4. In view of the foregoing holding, it becomes necessary to decide whether, as argued by appellant, any retrial of him is barred under *Burks v. United States*, 437 U. S. 1 (98 SC 2141, 57 LE2d 1) (1978), which essentially holds that the Double Jeopardy Clause prohibits retrial of a criminal defendant where the conviction has been reversed for evidentiary insufficiency, although retrial is permitted where reversal of the conviction is predicated on trial error.

Here, the prosecution's failure to present to the jury sufficient evidence to support the conviction resulted from an erroneous ruling of the trial court, which ruling was invoked by the appellant. Under these circumstances, we are of the opinion that, under *Burks*, the appellant has waived his right to obtain a judgment of acquittal due to evidentiary insufficiency. Consequently, we hold that a new trial is not barred by the Double Jeopardy Clause.

5. Next, the appellant advances a two-pronged attack on the constitutionality of OCGA § 16-12-103 (a).

(a) First, the appellant argues that the state's application of this statute to him in this case invades his constitutionally protected right of privacy, under the Due Process Clause of the Fourteenth Amendment, with respect to personal decisions concerning family relationships, child rearing, and education.

As authority, he cites the line of United States Supreme Court decisions exemplified by *Pierce v. Society of the Sisters of the Holy Names of Jesus and Mary*, 268 U. S. 510 (45 SC 571, 69 LE2d 1070) (1925), and *Carey v. Population Services Intl.*, 431 U. S. 678 (97 SC 2010, 52 LE2d 675) (1977). However, the appellant is not a parent of the alleged victim. And, unlike *Pierce* and *Carey*, he has no economic or non-economic relationship[6] with those third parties, i.e., parents, whose rights he seeks to vindicate. See Division 6 (a), infra. Consequently, we conclude that he lacks standing to assert this claim. Accord *Webb I*, 590 FSupp., supra at pp. 689-690.

(b) Citing *Stanley v. Georgia*, 394 U. S. 557 (89 SC 1243, 22

---

[6] These cases hold that " 'vendors and those in like positions . . . have been uniformly permitted to resist efforts at restricting their operations by acting as advocates for the rights of third parties who seek access to their market or function.' [*Craig v. Boren*, 429 U. S. 190, 195 (97 SC 451, 456, 50 LE2d 397) (1976)]." *Carey*, 431 U. S., supra at p. 684. In *Pierce*, various private educational institutions were challenging the constitutionality of a state statute requiring parents to send their minor children to public schools. In *Carey*, certain distributors of contraceptives were challenging the constitutionality of a state statute prohibiting anyone other than a licensed pharmacist from distributing contraceptives to anyone under the age of 16.

LE2d 542) (1969), the appellant also argues that the application of OCGA § 16-12-103 (a) to him in this case constitutes an unconstitutional intrusion into his right of personal privacy within the private and non-commercial boundaries of his home.

As stated by the appellant, *Stanley* holds that, "[a] State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch." 394 U. S. at p. 565. We conclude that *Stanley* is inapposite, because, unlike *Stanley*, the present case does not involve "a man, sitting alone in his own house." Id. Nor does it involve "mere possession [of obscene material] by the individual in the privacy of his home." Id. at p. 568. Rather, it involves the exhibition of such material to a child, and antisocial conduct engaged in by the appellant in connection therewith. Consequently, *Stanley* is distinguishable, and *Ginsberg* is controlling. Id. at p. 567.

6. Finally, the appellant contends that he cannot now be prosecuted for violating OCGA § 16-12-103 (a), inasmuch as this statutory provision has been held to be unconstitutional by the federal district court in *Webb II*. We disagree.

(a) In *Webb I*, an action for declaratory judgment and injunctive relief was instituted by various associations of booksellers, publishers, and others, who challenged the constitutionality of § 3 of the 1984 Act under the First Amendment, as well as the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

In addition, the plaintiffs in *Webb I* challenged the constitutionality of the 1984 Act under our state constitution. In this connection, § 1 of the 1984 Act amended OCGA § 16-6-4 (b), relating to the offense of child molestation, and § 2 of the Act amended OCGA § 16-6-5, relating to the offense of enticing a child for indecent purposes. As previously stated, § 3 of the Act amended OCGA §§ 16-12-102; 16-12-103, and 16-12-104 relating to the sale and distribution of harmful material to minors. The plaintiffs in *Webb I* argued that the inclusion of these three sections into one Act violated the multiple subject-matter prohibition contained in Art. III, Sec. V, Par. III, of the Georgia Constitution.

The federal district court in *Webb I* ruled that, under the *Pullman* doctrine,[7] it would abstain from adjudicating the merits of the plaintiffs' constitutional claims and remit them to the courts of Georgia for resolution of their state constitutional challenge. The abstention doctrine was invoked by the federal district court on grounds that it was uncertain that the 1984 Act complied with the foregoing state constitutional provision, and a holding by the Georgia courts

---

[7] *Railroad Comm. of Texas v. Pullman Co.*, 312 U. S. 496 (61 SC 643, 85 LE 971) (1941). See *Webb I*, 590 FSupp., supra at p. 682.

that the Act violated this constitutional provision would moot the plaintiffs' federal constitutional challenges.

However, the court in *Webb I* ruled that even where, in a case such as this, federal-court abstention is appropriate under the *Pullman* doctrine, it is still necessary to determine whether to grant the plaintiffs interim relief, temporarily restraining the state from enforcing the challenged statutory provisions during the period of abstention.

The court in *Webb I*, among other things, denied interim relief with respect to the *definition* component contained in OCGA § 16-12-102 because of the court's determination, for the reasons discussed in Div. 2, supra, that the plaintiffs were unlikely to succeed on their claim that the definition component is unconstitutionally vague and overbroad.

Likewise, the court denied interim relief with respect to OCGA § 16-12-103 (a)'s *distribution* component. With respect to the *distribution* component, the plaintiffs argued that it is unconstitutionally overbroad and unconstitutionally infringes on parents' rights to rear their children free from state interference. As to this claim, the court, citing *Pierce*, supra, found it unlikely that the plaintiffs had standing to contest the constitutionality of the *distribution* component on the ground that it unconstitutionally infringes on parents' rights. In *Pierce*, it was held that private educational institutions had standing to contest the constitutionality of a state statute requiring parents to send their minor children to public school because of the irreparable economic injury that the statute's enforcement would cause them. See note 6, supra. In *Webb I*, the district court ruled that the plaintiffs there had made no showing that the injury to them as a result of the statute's enforcement would be commensurately great, since there was no evidence that any significant portion of the plaintiffs' business consisted of selling parents materials covered by the challenged law for use by their minor children.

The district court in *Webb I* did rule that the plaintiffs had raised substantial overbreadth and vagueness issues with respect to the Act's *display* provisions, concluding that "enforcement of the *display* provisions prior to a possible narrowing interpretation of the Act by the Georgia courts would result in immediate, irreparable injury to the first amendment rights of both plaintiffs and others." 590 FSupp. at p. 692. However, the court in *Webb I* expressly noted that, "the state's effort to regulate such materials would remain unimpaired with regard to the prohibition of distribution and exhibition of such materials pursuant to § 16-12-103 (a) and (b)." (Footnote omitted.) Id.

(b) On appeal, the federal appellate court in *Webb I* certified two questions to this court. The first question was whether the 1984 Act

violates the Georgia constitution's prohibition against the legislature's inclusion of multiple subject matters into one Act. In *Webb I*, the federal appellate court, in recognizing that the district court had intimated that a narrowing construction of the 1984 Act by the Georgia courts had the potential for eliminating plaintiffs' federal constitutional challenges, certified a second question with respect to our interpretation of the 1984 Act, particularly the *display* provisions.

(c) In this court's decision in *Webb I*, we responded to the federal appellate court's requests by stating that the 1984 Act is not violative of the foregoing state constitutional provision. However, we declined to answer the other question, because the overbreadth challenge to the 1984 Act was anticipatory only, and there were no facts in *Webb I* which presented a controversy to which this court could apply the challenged provisions of the Act.

(d) Following our decision in *Webb I*, the federal district court in *Webb II* ruled that the *display* component of the 1984 Act is unconstitutional because of the significant portion of constitutionally protected adult-reading material encompassed within the Act, and because the practical difficulties faced by booksellers in winnowing material "harmful to minors" under the 1984 Act from other material impermissibly chills the access of adults to protected forms of expression. The court further ruled that the library exemption violates the Equal Protection Clause.

In response to the plaintiffs' contention that if any component of the Act was found to be unconstitutional the entire Act must fall, the court in *Webb II* stated, "[t]he Georgia legislature has, however, created a general presumption of severability. OCGA § 1-1-3. In addition, although divining legislative intent is never an exact science, the Court has little trouble concluding that the legislature would desire to have the definition, distribution, and exhibition provisions of the Act severed from the unconstitutional display provision. The library exception presents a significantly closer question, however. Arguably, severing the library exception from the remainder of the Act would contravene the legislature's intention to exempt libraries from criminal liability. It is possible, however, that once the display provision is stricken libraries would face little practical risk of prosecution. The existing record fails to address this issue adequately. Now that the scope of the Court's ruling on the constitutional issues is clear, the parties will be better able to address the issue of severability." 643 FSupp. at p. 1556.

The foregoing decision was rendered by the federal district court on September 26, 1986.

(e) On February 25, 1987, the court entered another order. In this latter order, the court ruled that even though the striking of the *display* component greatly reduces the risk of criminal prosecution of

libraries, the theoretical possibility that libraries could still face criminal prosecution under the *distribution* component mandates the conclusion that the library exemption is not severable, since "allowing the Act to stand without the library exception would contravene the legislature's intent by expanding the ambit of criminal liability."

However, recognizing that the *definition, exhibition,* and *distribution* components are constitutional, and that they "represent a valid attempt by the legislature to protect the youth of Georgia from unsuitable materials," the court ruled that although the plaintiffs were entitled to injunctive relief as to all provisions of the Act, it would "stay until the resolution of the appeal that portion of the injunction involving the constitutional *definition, exhibition,* and *distribution* components. Such a stay will enable defendants to continue enforcing the constitutional provisions of the Act."

(f) Consequently, this federal-court decision does not prohibit the state from prosecuting the appellant for violating the *exhibition* and *definition* components of the Act.

However, if the federal appellate courts, in their review of the district court's decision in *Webb II*, hold that either the *display* or *exemption* component is unconstitutional, and that the remaining components of the Act are not severable, any conviction obtained against the appellant under the *distribution* and *definition* components would undoubtedly be set aside by the federal judiciary, see generally *Hammock v. Zant*, 243 Ga. 259 (253 SE2d 727) (1979), unless corrective legislation is enacted by the Georgia General Assembly. In this regard, we note that, inasmuch as the *definition, exhibition,* and *distribution* components of the Act have been held to pass constitutional muster, it remains within the province of the Georgia General Assembly to revivify these constitutional provisions by enacting legislation: (1) expressly stating that the constitutional provisions of the Act are severable from those provisions found to be unconstitutional, and/or (2) amending the Act by eliminating the constitutional defects found to exist in the *Webb* decisions.

The judgment of conviction is reversed under our holding in Division 3, supra, and the case is remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed. All the Justices concur.*

DECIDED NOVEMBER 5, 1987.

*Sakas & Horne, Harold A. Horne, Jr.,* for appellant.
*Robert E. Wilson, District Attorney, J. Thomas Morgan, Assis-*

*tant District Attorney*, for appellee.