## A94A1188. HOLLIS v. THE STATE.
### (450 SE2d 247)

SMITH, Judge.

Robert Lee Hollis was tried and found guilty by a jury of two counts of child molestation, one count of aggravated child molestation, three counts of solicitation of sodomy, three counts of contributing to the unruliness of a minor, and ten counts of exhibiting harmful materials to minors. His motion for new trial was denied, and he appeals.

1. Hollis relied on an insanity defense at trial. Accordingly, the jury was instructed as to possible verdicts of not guilty, not guilty by reason of insanity, guilty, and guilty but mentally ill on the felony counts. See OCGA § 17-7-131 (b) (1). After verdicts of guilty were returned on all counts, Hollis filed a motion "to amend the verdict to reflect the evidence of guilty but mentally ill." In support of his motion, Hollis pointed out that there was consensus among the psychiatrists called by the State and the defense that he "has severe psychiatric problems regardless of his ability to distinguish right from wrong," that the jury's failure to find Hollis guilty but mentally ill may have been purely punitive in nature, and also that adjusting the verdict to reflect the evidence was not only in his own best interest, but also in the best interest of society as a whole. Hollis enumerates the trial court's denial of this motion as error.

A verdict of guilty but mentally ill is substantively indistinguishable from any other guilty verdict with respect to the convicted person's culpability and the punishment to be imposed; such a verdict merely triggers certain procedures designed to address the convicted person's mental illness to the extent of available resources. OCGA § 17-7-131 (g) (1); *Logan v. State*, 256 Ga. 664, 665 (352 SE2d 567) (1987). A defendant has a statutory right to have the jury consider such a verdict as an alternative to a simple verdict of guilty. OCGA § 17-7-131 (c) (2); see generally *Spraggins v. State*, 258 Ga. 32 (364 SE2d 861) (1988). OCGA § 17-7-131 (c) (2) has been interpreted as requiring a finding of mental illness beyond a reasonable doubt before a verdict of guilty but mentally ill is authorized. *Spivey v. State*,[1] 253

---

[1] In *Spivey,* the Supreme Court was called upon to determine whether the trial court's *charge* to the jury was unconstitutionally burden-shifting. The actual likelihood that the jury would interpret the charge complained of in that case as the defendant urged was apparently not considered. Instead, the *Spivey* court accepted the appellant's interpretation of the charge as both accurate and in accord with OCGA § 17-7-131 (c) (2), and held that a require-

Ga. 187, 188-189 (2) (319 SE2d 420) (1984); but see *Keener v. State*, 254 Ga. 699, 702 (2) (334 SE2d 175) (1985); see also *Mitchell v. State*, 187 Ga. App. 40, 45 (7) (369 SE2d 487) (1988).

Hollis relied on OCGA § 17-9-40 in support of his motion, which provides that "[a] verdict may be amended in mere matter of form after the jury have dispersed; but . . . may not be amended in matter of substance, either by what the jurors say they intended to find or otherwise." He theorized that "guilty but mentally ill" is not a substantive change in the verdict but merely a change in form which would correctly address his situation.

We agree with Hollis that changing the verdict in this fashion would not affect his sentence. *Logan,* supra. However, the question under OCGA § 17-9-40 is not whether a proposed amendment to the verdict would effect sentencing, but rather whether such an amendment would effect a substantive change in that verdict. As the trial court observed from the bench, "[Hollis's motion] would absolutely change the jury's verdict. They were given that option and they absolutely rejected it." Although there may be some arguable merit in giving the trial court discretion to invoke the procedure outlined in OCGA § 17-7-131 (g) notwithstanding the jury's verdict in an appropriate case, altering the substance of the jury's verdict is not an appropriate means of achieving that end. Hollis's motion to amend the verdict to reflect a finding of guilty but mentally ill was properly denied.

2. Hollis, through new counsel, argues that he received ineffective assistance of counsel due to the late filing of a motion to suppress certain items taken from his home that were not listed in the State's search warrant. See USCR 31.1. The opportunity lost by the failure to timely file the motion in question was the opportunity to argue for the suppression of the evidence as illegally seized under OCGA § 17-5-30. Hollis does not argue on appeal that the evidence was in fact illegally seized, but instead argues that the items in question bore no relation to the charges or issues addressed at trial and were otherwise unfairly prejudicial. Hollis likewise does not suggest that it was incumbent upon his trial counsel to challenge the *relevance* of the evidence by written motion prior to his arraignment. The trial court emphasized that it "would obviously not admit anything other than what was admissible" notwithstanding the late filing. "The burden is upon appellant to show affirmatively not only error but that it was harmful. [Cit.]" *Brinson v. State*, 191 Ga. App. 151, 154 (5) (381 SE2d 292) (1989). Since Hollis totally fails to show that evidence would have

---

ment that a defendant prove that he is mentally ill beyond a reasonable doubt is not unconstitutionally burden-shifting.

been excluded at trial on any proper ground but for the failure of trial counsel to file a timely motion to suppress, we find no merit in this enumeration.

3. Hollis objects generally to the admission of "hundreds of pieces of documentary evidence" taken from his home pursuant to the search warrant referenced in Division 2. Relying on *Roose v. State*, 182 Ga. App. 748, 749 (1) (356 SE2d 675) (1987), Hollis essentially contends that since his state of mind was not at issue, this evidence should have been omitted. We disagree. Hollis's state of mind was at issue in this case due to the nature of Hollis's sole defense of insanity, and the materials in question clearly tended to rebut that defense. See generally *Blake v. State*, 239 Ga. 292, 295 (1) (236 SE2d 637) (1977). The evidence, taken as a whole, tended to show Hollis's bent of mind toward the commission of the crimes charged and his lustful disposition generally, especially toward children. See *Helton v. State*, 206 Ga. App. 215, 216-217 (424 SE2d 806) (1992). The trial court did not err in allowing the State to introduce the "hundreds of pieces of documentary evidence" to which Hollis very generally refers.

4. Hollis contends the trial court erred in restricting testimony regarding the defendant's mental state prior to the time period in which the incidents at issue took place. He claims his defense depended on counsel's ability to make its case regarding the recent onset of his "debilitating" mental illness. However, the witness in question specifically stated she did not observe the changes that defense counsel hoped to establish. The trial court ruled it was permissible to have the witness testify regarding any change she might have seen in Hollis's character during the period in question, but not regarding what Hollis's character might have been "ten years ago" "or even six months." The court added that "if she is going to say that he was normal up to a particular point, then that's not an issue," reasoning that "the issue for this jury is whether or not he ha[d] criminal responsibility at the time of the acts in question."

Citing *Chambers v. Mississippi*, 410 U. S. 284 (93 SC 1038, 35 LE2d 297) (1973), Hollis argues that the ability of a criminal defendant to present a defense is a hallowed and constitutionally protected right. "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." *Chambers* at 294.

On the other hand, "this court is not an expounder of theoretical law, but it administers practical law, and corrects only such errors as have practically wronged the complaining party." (Citations and punctuation omitted.) *Stamey v. State*, 194 Ga. App. 305, 309 (4) (390 SE2d 409) (1990). Hollis fails to persuade this court that the

trial court's ruling in any way infringed upon his ability to defend against any specific allegation made by the State. We therefore find no error.

5. As a defense to the charge of exhibiting harmful materials to a minor, Hollis endeavored to present the testimony of a defense witness to the effect that the materials viewed by the minors in question were not in fact harmful. "[T]he term . . . '[h]armful to minors' means that quality of description or representation, in whatever form, of nudity, sexual conduct, sexual excitement, or sadomasochistic abuse, when it: (A) Taken as a whole, predominently appeals to the prurient, shameful, or morbid interest of minors; (B) Is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable material for minors; and (C) Is, when taken as a whole, lacking in serious literary, artistic, political, or scientific value for minors." OCGA § 16-12-102 (1). The question for the jury was not whether the materials in question are "harmful to minors" in some unstructured, theoretical sense, but rather whether they were harmful under the "prevailing standards in the adult community as a whole with respect to what is suitable material for minors." Id. Therefore, whether a defense expert *personally* considers the materials to be harmful (and, by logical extension, whether the public generally might be misinformed regarding the impact of exhibiting sexually graphic materials to minors) is irrelevant under OCGA § 16-12-101 et seq. This enumeration is without merit.

6. Hollis argues that the court erred in making a comment to the jury that lessened its sense of responsibility for the verdict against him. We agree.

The State's presentation of evidence with respect to the several counts of exhibiting harmful materials to minors included the viewing of certain sexually explicit videotapes. A recess was taken between viewings. Before the jury returned, the State suggested that the playing of yet another videotape would not add anything, and that its case had been made. Moreover, defense counsel expressed its willingness to stipulate that the videotape in question, entitled "Blacks and Blondes, Volume 39," contained explicit sexual content. The trial court reluctantly but vocally disagreed, basing its opinion on the case of *Hunter v. State*, 257 Ga. 571, 573-574 (3) (361 SE2d 787) (1987). That case essentially held that a jury must view a film as a whole in determining whether it may "be adjudged obscene under [OCGA] § 16-12-103 (a) (1)."[2] Id. at 573 (3). Before the jury was returned, the

---

[2] As interpreted in *Hunter*, it would appear that no matter how graphic, obviously inappropriate and potentially harmful certain footage might be under the prevailing standards of the adult community with respect to what is suitable to exhibit to minors, there remains a theoretical possibility that such footage could be rendered not harmful under the statute

trial court made very clear its opinion of *Hunter*, which was far from favorable.

The jury was then brought in, and the court addressed the jurors as follows: "We try to expedite these thing[s]. We have one more film to watch in its entirety. It is about a half an hour, 30 minutes. We ought to be — that will be the end of the tapes. The good news is we probably have to do some things out of your presence, which is going to take an awfully long time, and we will probably let you go after you finish watching this movie for half an hour. That will be your reward. I appreciate your understanding. I appreciate your patience. As I said before — you can write the Supreme Court of Georgia and tell them what you think about their decision. I have already told them what I think, *and they will get a chance to see this record*." (Emphasis supplied.)

The law to be applied to this issue, cited by neither Hollis nor the State, is quite clear. "The Supreme Court has repeatedly held references should not be made to the reviewing courts by court or counsel except to cite their decisions. [Cits.]" *Floyd v. State*, 135 Ga. App. 217, 218 (2) (217 SE2d 452) (1975). The jurors are presumed to be intelligent men and women who "could not escape the conclusion that the trial court was telling them that after the trial had ended, *defendant and his counsel would be cast in the role of 'excepting'* to what had taken place during the trial — in other words, that they would lose the case and defendant would be convicted." Id. at 218-219 (2). Mere abstract references to the appellate courts are not necessarily reversible error, especially when they "[do] not convey or intimate any opinion of the trial judge nor lessen the sense of responsibility of the jurors," but the comments by the trial court here do not fall into that category. (Citation omitted.) *Bearden v. State*, 159 Ga. App. 892, 893 (3) (285 SE2d 606) (1981).

Hollis, however, made no motion for mistrial or other objection below, and this enumeration therefore provides no basis for reversal. See generally *Pulliam v. State*, 196 Ga. 782, 789-791 (6) (28 SE2d 139) (1943) (overruling a contrary view as applied to the predecessor to current OCGA § 17-8-57). It is axiomatic that a defendant " 'can-

---

when placed in the context of the work when viewed as a whole. *Hunter* appears to engraft upon OCGA § 16-12-103 (a) (1) the requirement that the work as a whole be adjudged obscene rather than merely "harmful to minors" as defined in OCGA § 16-12-102 (1). Missing from the analysis in *Hunter* is the question whether the prevailing standards of the adult community are such that a single scene that is "patently offensive" within the meaning of OCGA § 16-12-102 (1) (B) may render the whole of the tape harmful *to minors*, regardless of any redeeming social value the work may have for adult viewers. Moreover, even if the defendant is willing to stipulate that a portion of a videotape is fairly representative of the film as a whole, the jury is apparently required under *Hunter*, presumably for the defendant's own protection, to view the potentially inflammatory and offensive evidence in its entirety before the State can be said to have made its case.

not during the trial ignore what he thinks to be an injustice, take his chance on a favorable verdict, and complain later.' [Cits.]" *Scott v. State*, 229 Ga. 541, 547 (6) (192 SE2d 367) (1972).

Judgment affirmed. *Pope, C. J., and McMurray, P. J., concur.*

DECIDED OCTOBER 24, 1994.

*Elizabeth V. Rogan*, for appellant.

*J. Tom Morgan, District Attorney, Jeffrey H. Brickman, Gregory J. Lohmeier, Assistant District Attorneys*, for appellee.