A96A2057. BUTLER v. THE STATE.
(483 SE2d 385)

POPE, Presiding Judge.

In 1980, Mary Adams Butler, who is a paranoid schizophrenic, was indicted for murdering a Decatur County Deputy Sheriff. At the time of the murder, the deputy was attempting to take Butler to a

mental hospital pursuant to an emergency insanity order issued by the probate court. After entering a special plea of insanity, Butler was committed to the custody of the Department of Human Resources until the time it was determined she was competent to stand trial. Following a hearing in 1983, the Decatur County Superior Court made such a determination, and thereafter, a jury, rejecting Butler's contention that she was insane at the time of the murder, found Butler guilty. She was sentenced to life in prison. The Supreme Court of Georgia, however, reversed the conviction. In doing so, it determined that a presumption arose that Butler was insane at the time of the murder based on her presentation during trial of a certified copy of the probate court's insanity order. Because the state presented no evidence to rebut the presumption, the Supreme Court concluded that no rational jury could have found Butler failed to prove she was insane at the time she killed the deputy. It then remanded the case for disposition in accordance with OCGA § 17-7-131. *Butler v. State*, 252 Ga. 135, 138 (311 SE2d 473) (1984). Subsequently, Butler again was committed. On September 22, 1995, Butler filed an application for conditional release from commitment in the Decatur County Superior Court. Her application was denied by the same trial judge that presided over her murder trial and had presided over numerous other release hearings that Butler had requested over the years. See *Butler v. State*, 258 Ga. 344 (369 SE2d 252) (1988). On appeal, Butler contends the superior court erred in denying her conditional release. We disagree and affirm.

Under OCGA § 17-7-131 (e) (5) (A) "[i]f [an insanity acquitee] appears to meet the criteria for outpatient involuntary treatment as defined by Part 3 of Article 3 of Chapter 3 of Title 37, which shall be the criteria for release on a trial basis in the community in preparation for a full release, the [committing] court may order a period of conditional release subject to certain conditions set by the court." As acknowledged by both parties in this case, during the hearing to determine whether an insanity acquitee meets the criteria for conditional release, the burden is on the acquitee. See OCGA § 17-7-131 (f) (2). And, once a person is found not guilty by reason of insanity and committed to a mental hospital, the person is presumed to be unfit for such release. See *Cox v. State*, 171 Ga. App. 550, 551 (320 SE2d 611) (1984). Consequently, at her conditional release hearing, Butler had the burden of rebutting the above presumption and demonstrating by a preponderance of the evidence that she no longer met the criteria for inpatient involuntary treatment as set forth in OCGA § 37-3-1 (9.1).[1] See *Pope v. State*, 172 Ga. App. 396, 397 (2) (323 SE2d

---

[1] Under OCGA § 37-3-1 (9.1), a person meets the criteria for inpatient involuntary

268) (1984).

In an attempt to meet her burden, Butler presented a proposed conditional release plan prepared by the staff of the mental hospital in which she resided. Under the plan, Butler would be allowed to live in a six-person Intensive Treatment Residence staffed by mental health professionals, but not located on hospital grounds. Butler also testified in her own behalf and presented testimony from a counselor and psychologist from the hospital.

Although the counselor and psychologist both generally supported Butler's conditional release under the proposed plan, their support was based primarily on their conclusions that Butler was no longer a danger to herself or others because her mental condition was controlled by medication and that Butler would continue to take her medicine if she were conditionally released. The record, however, shows that the trial court had reason to doubt these conclusions based on the witnesses' unfamiliarity with important aspects of Butler's case. Specifically, neither of Butler's professional witnesses was thoroughly familiar with her history concerning medication. The counselor was primarily familiar with the social elements of Butler's treatment, and the psychologist testified that he was not even involved in Butler's treatment, per se, but instead served as a liaison between Butler's treatment team and the court. And the record indicates that the medicine used in an attempt to control Butler's schizophrenia had been changed fairly recently from one requiring a monthly injection to one requiring the ingestion of pills three times a day. Neither of Butler's witnesses knew the reason for the change in medicine, and the only testimony regarding the amount of time it would take for Butler to decompensate upon failing to take the new medicine, thereby again becoming psychotic, had no factual basis. According to Butler, the reason for the change was the fact that she was continuing to hear voices. While she testified that the new medicine helped with this problem, she admitted that it did not solve it, and that at times the problem was severe.

The record further demonstrates that there was at least one instance occurring within the previous several years which brought into doubt the conclusion that Butler would continue to take her medicine under the less restrictive environment afforded her by the conditional release plan. As referenced by the state, and judicially noticed by the superior court, Butler previously had participated in a

---

treatment if the person "is mentally ill and . . . presents a substantial risk of imminent harm to [themselves] or others, as manifested by either recent overt acts or recent expressed threats of violence which present a probability of physical injury to that person or other persons[,] or . . . [the person] is so unable to care for [their] own physical health and safety as to create an imminently life endangering crisis. . . ."

program where she was allowed to live in an apartment-type setting on the grounds of a mental hospital. Butler, however, was expelled from the program due to her inability to comply with the rules of the program. There was also testimony from the psychologist that paranoid schizophrenics had a tendency to stop voluntarily taking their medicine after the medicine had stabilized their condition.

In light of the above, the superior court clearly could have rejected the conclusions reached by Butler's professional witnesses. Moreover, we note that in cases like this, "[t]he trial judge, as the finder of fact, is not bound by the opinions of either lay or expert witnesses and may rely upon the basic presumptions permitted by law." (Citations omitted.) *Cox*, 171 Ga. App. at 551. And, it was within the superior court judge's discretion to reject Butler's mere promise that she would continue to take her medication upon conditional release.

Accordingly, based on the superior court's familiarity with Butler's condition and case history, the evidence at the hearing, including that judicially noticed by the court, and the presumptions of law existing in cases like this, we are satisfied that the superior court judge, as a "rational trier of fact[ ] could have found that [Butler] failed to prove by a preponderance of the evidence that [s]he did not meet the criteria for [inpatient involuntary] commitment." (Citations omitted.) *Pope*, 172 Ga. App. at 397 (2).

*Judgment affirmed. Andrews, C. J., and Smith, J., concur.*

DECIDED MARCH 7, 1997.

*Lloyd C. Burton, Keith J. Williams,* for appellant.
*J. Brown Moseley, District Attorney, Robert R. Auman, Assistant District Attorney,* for appellee.
*Debra J. Blum,* amicus curiae.