A11A2261. NEWMAN v. THE STATE.
(722 SE2d 911)

MILLER, Judge.

In 1998, Debbie Lynn Newman entered a special plea of not guilty by reason of insanity to charges of malice murder, felony murder, and four counts of aggravated assault. Newman was ordered into the custody of the Department of Human Resources, and she has since remained committed for inpatient involuntary treatment pursuant to OCGA § 17-7-131 (e) (4). In February 2011, Newman filed a petition for release under OCGA § 17-7-131 (f), alleging that she no longer met the inpatient civil commitment criteria. Following an evidentiary hearing, the trial court denied the petition. On appeal, Newman challenges the trial court's decision and contends

that the trial court failed to consider the credible and relevant expert testimony showing that she no longer needed inpatient involuntary treatment. We discern no error and affirm.

A defendant who has been found not guilty by reason of insanity at the time of the crime and has been ordered to inpatient involuntary commitment may only be released from commitment by order of the trial court. See OCGA § 17-7-131 (f). After a plea of insanity has been successfully entered, a presumption of continuing insanity arises. See *Nagel v. State*, 262 Ga. 888, 889 (1) (427 SE2d 490) (1993). A defendant who files an application for release has the burden of rebutting the presumption and proving by a preponderance of the evidence that inpatient involuntary treatment is no longer required. See OCGA § 17-7-131 (f) (2); *Nagel*, supra, 262 Ga. at 889 (1); *Nelor v. State*, 309 Ga. App. 165, 165-166 (709 SE2d 904) (2011).

In ruling upon an application for release under OCGA § 17-7-131 (f), the trial court is the factfinder and must determine the credibility of witnesses and the probative value of the testimony. See *Nelor*, supra, 309 Ga. App. at 166. "The [trial] court must consider all credible and relevant expert and other evidence presented at the [release] hearing and contained in the trial record on the issue[.]" (Footnote omitted.) *Gray v. State*, 295 Ga. App. 737 (673 SE2d 84) (2009). In addition, the trial court must weigh the evidence in light of the defendant's burden to overcome the presumption of continuing insanity, and must supply specific findings and conclusions based upon the evidence. See *Nagel*, supra, 262 Ga. at 892-893 (2) (b). On appeal from the trial court's decision, we review the evidence in the light most favorable to the State and determine whether a rational trier of fact could have found that the defendant failed to prove by a preponderance of the evidence that she was no longer in need of inpatient involuntary treatment. See id. at 892 (2) (b); *Nelor*, supra, 309 Ga. App. at 166.

So viewed, the record shows that in 1997, Newman was charged with malice murder, felony murder, and four counts of aggravated assault based upon allegations that she had intentionally crashed her motor vehicle into a vehicle occupied by the four victims. Newman entered a plea of not guilty by reason of insanity to the charges. She submitted to a mental evaluation with a professional counselor and a forensic psychiatrist, who jointly issued a mental assessment report opining that Newman was blatantly psychotic at the time of the charged offenses. The report reflected that Newman had a prior history of mental illness and had received outpatient treatment at the Medical College of Georgia following several suicide attempts. The report further indicated that after Newman was arrested for the charged offenses, she repeatedly banged her head on a wall, made suicide threats, responded to inaudible voices, experienced delusions,

and had visual and auditory hallucinations.

In 1998, the trial court entered an order finding that Newman was insane and committed her into the custody of the Department of Human Resources for inpatient involuntary treatment. Thereafter, Newman's status was re-examined, and the trial court entered orders continuing her commitment. From 2007 to 2011, Newman filed petitions for release annually. The trial court denied her petitions.

In February 2011, Newman filed the instant petition for release. At a release hearing, Newman presented the testimony of her attending physician and her behavior specialist. The attending physician testified that he began evaluating Newman in January 2010. He stated that Newman's current diagnosis was chronic schizophrenia paranoia. He claimed that Newman had responded very well to medication, that records indicated she had been on the same dosages of Seroquel and Zoloft since 1997, and that she had shown no symptoms of psychosis since 2005. The attending physician opined that Newman no longer met the inpatient civil commitment criteria and that she was eligible for outpatient treatment. He noted, however, that other treating physicians had different opinions about whether Newman met the release criteria, and that some believed Newman had remaining symptoms of mental illness.

Newman's patient history revealed that in 2005, she reacted negatively when she was transferred to a new hospital. Newman made statements such as, "I'll do anything I can do . . . to avoid being transferred," which made the hospital staff afraid that she was suicidal. As a result of the incident, Newman was placed on a greater level of supervision for a 24-hour period. In January 2006, Newman had a physical altercation with another patient in the hospital. More recently in 2010, Newman became upset, irritated, and had an auditory hallucination following the trial court's hearing and denial of her prior petition for release. The attending physician testified that Newman was on medications when she experienced the recent symptoms, and that her medications had to be increased to treat her condition. The attending physician further advised that patients diagnosed with schizophrenia tend to relapse regardless of treatment. He nevertheless opined that Newman's relapse would be unlikely if she continued with her current medications.

Newman's behavior specialist testified that her team had made a unanimous recommendation that Newman be transferred to an outpatient group home. The behavior specialist stated that she had been treating Newman since May 2005, and that Newman had not demonstrated any violent or threatening behavior. She further testified that Newman was neither aggressive nor a danger to herself or others. The behavior specialist nevertheless acknowledged that

Newman had experienced some unrest when she was transferred to the facility in 2005, that she continued to experience triggers of decompensation or frustration after failing to make progress toward a conditional release, and that her medications were recently increased.

Based upon the evidence presented, the trial court denied Newman's February 2011 petition for release. The trial court found that Newman failed to rebut the presumption of continuing insanity, and that she continued to meet the criteria for inpatient involuntary treatment. The trial court made specific findings that the hearing testimony established that Newman had resorted to violence after being provoked by a fellow patient in January 2006, and that she had exhibited symptoms of mental illness while in custody and while on her medications.

"OCGA § 37-9-1 (9.1) provides that mentally ill persons require inpatient involuntary treatment if they present a substantial risk of imminent harm to themselves or others, or are so unable to care for their own physical health and safety as to create an imminently life-endangering crisis." *Nelor*, supra, 309 Ga. App. at 165. The trial court's ruling that Newman continued to meet the statutory inpatient involuntary treatment criteria was authorized by the record evidence. The record shows that the trial court properly considered and based its findings upon the expert testimony presented at the hearing. Although Newman's experts expressed opinions that she no longer met inpatient civil commitment criteria and was eligible for outpatient treatment, the experts also gave inconsistent testimony that supported the trial court's findings to the contrary.[1] Significantly, the expert testimony reflected that Newman had a physical altercation with a patient in January 2006; more recently in 2010, she relapsed and experienced an auditory hallucination after the trial court denied her prior request for release, which led to an increase in her medications; and differing opinions existed among her treating physicians as to whether she met the release criteria.

The aforementioned evidence permitted a finding that Newman failed to rebut the presumption of continuing insanity and that inpatient involuntary treatment was still required. See *Gray*, supra, 295 Ga. App. at 738 (concluding that the defendant continued to meet the criteria for inpatient involuntary treatment in light of

---

[1] Notably, "[t]he trial court, rather than mental health professionals, has the responsibility for deciding applications for release under OCGA § 17-7-131." (Citation and punctuation omitted.) *Nagel*, supra, 262 Ga. at 889 (1). Moreover, "the mere presentation of evidence to the contrary does not necessarily serve to rebut the presumption; such evidence must outweigh the presumption when the trier of fact balances that evidence against the presumption." Id. at 891 (2) (a).

evidence that she had recently resorted to violence after being provoked by a fellow patient at the hospital); *Butler v. State*, 225 Ga. App. 288, 290-291 (483 SE2d 385) (1997) (concluding that the defendant continued to meet the criteria for inpatient involuntary treatment based upon evidence that the medication used in an attempt to control her schizophrenia had been recently changed since she was continuing to hear voices). The trial court's denial of Newman's petition for release was not erroneous.

*Judgment affirmed. Ellington, C. J., and Doyle, P. J., concur.*

DECIDED FEBRUARY 13, 2012.

*Alicia H. Thomas*, for appellant.
*R. Ashley Wright, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.