**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 18, 2013**

# In the Court of Appeals of Georgia

A13A1410. COOGLER v. THE STATE.                          DO-053 C

DOYLE, Presiding Judge.

In August 2006, Ronald Coogler was found not guilty by reason of insanity ("NGRI") of criminal damage to property,[1] criminal trespass,[2] and criminal damage to property in the second degree.[3] Thereafter, he was adjudicated NGRI and civilly committed to the Department of Behavioral Health and Developmental Disabilities ("the Department") for involuntary treatment pursuant to OCGA §§ 17-7-131 and 37-3-1. In April 2011, pursuant to OCGA § 17-7-131 (e) (5) (B), Coogler filed a petition for full release from the verdict of NGRI, which the trial court denied in a July 18,

---

[1] OCGA § 16-7-22 (a) (1).

[2] OCGA § 16-7-21 (a).

[3] OCGA § 16-7-23 (a) (1).

2011 order. Coogler now appeals, arguing that the trial court erred by denying his petition. We agree and reverse.

Pursuant to OCGA § 17-7-131 (e) (5) (A) & (B),

> If a[n Acquittee] appears to meet the criteria for outpatient involuntary treatment . . . for release on a trial basis in the community in preparation for a full release, the court may order a period of conditional release subject to certain conditions set by the court. The court is authorized to appoint an appropriate community service provider to work in conjunction with the Department . . . to monitor the [Acquittee]'s compliance with these conditions and to make regular reports to the court. . . . *If the [Acquittee] successfully completes all requirements during this period of conditional release, the court shall discharge the individual from commitment at the end of that period.* Such individuals may be referred for community mental health, mental retardation, or substance abuse services as appropriate. The court may require the individual to participate in outpatient treatment or any other services or programs authorized by Chapter 3, 4, or 7 of Title 37.[4]

"After a plea of insanity has been successfully entered, a presumption of continuing insanity arises."[5] When reviewing an order denying the petition for full release from the verdict of NGRI, this Court determines whether any rational trier of

---

[4] (Emphasis supplied.)

[5] *Newman v. State*, 314 Ga. App. 99, 100 (722 SE2d 911) (2012).

fact could have found that the acquittee failed to prove his burden by a preponderance of the evidence.[6] "In addition, the trial court must supply specific findings of fact regarding the presented evidence and its conclusions based thereon. The court must consider all credible and relevant expert and other evidence presented at the hearing and contained in the trial record on the issue . . . ."[7]

Pursuant to OCGA § 37-3-1 (12.1), an outpatient is a mentally ill person,

(A) [w]ho is not an inpatient but who, based on the person's treatment history or current mental status, *will require outpatient treatment in order to avoid predictably and imminently becoming an inpatient*; (B) [w]ho because of the person's current mental status, mental history, or nature of the person's mental illness *is unable voluntarily to seek or comply with outpatient treatment*; and (C) [w]ho is in need of involuntary treatment.[8]

Thus, we review the trial court's order to determine whether a rational trier of fact could have found that Coogler failed to establish by a preponderance of the

---

[6] See *Nelor v. State*, 309 Ga. App. 165, 165-166 (709 SE2d 904) (2011) (reversing an order denying release from inpatient treatment to conditional, involuntary outpatient treatment). See also *Newman*, 314 Ga. App. at 100.

[7] (Footnote omitted.) *Gray v. State*, 295 Ga. App. 737 (673 SE2d 84) (2009). See also OCGA § 37-3-1 (12.1).

[8] (Emphasis supplied.)

3

evidence that he was sane,[9] and more specifically to the issue of moving from an involuntary outpatient to full release from the NGRI verdict, that (1) he did not require outpatient treatment to avoid predictably and imminently becoming an inpatient; (2) he could voluntarily seek and comply with outpatient treatment; and (3) he does not need involuntary treatment.[10]

The record reveals that in 2003, several of Coogler's neighbors at an apartment complex contacted police after a firearm was discharged. Approximately five shots were fired, including one into an apartment and the remainder at vehicles around the complex. Coogler was seen by neighbors hiding behind trees and eventually disposing of a weapon in a grassy area; his arrest took some time because he was spending the night at various hotels around the area. Although Coogler had a competency hearing set for September 30, 2005, he absconded and boarded a plane for Russia, where he was taken into custody based on statements to Russian officials and hospitalized at that time for 30 days. Thereafter, he was returned to the United

---

[9] See *Nagel v. State*, 262 Ga. 888, 892 (2) (b) (427 SE2d 490) (1993), citing *Brown v. State*, 250 Ga. 66, 71-72 (2) (c) (295 SE2d 727) (1982).

[10] See OCGA § 37-3-1 (12.1). This inquiry, we note, is not whether it is a benefit to the acquittee to have the NGRI verdict lifted or whether the NGRI is infringing on the acquittee's life.

4

States based on his bench warrant for the 2003 incident. In 2006, he underwent a psychological evaluation to determine his competency to stand trial. In August 2006, the trial court entered an order finding Coogler NGRI.

In late March 2007, Coogler was granted a 30 day conditional release to a supervised residential facility. In early May 2007, Coogler was given a six-month conditional release from inpatient treatment to a supervised residential facility with outpatient treatment. In October 2007, Coogler was released from the portion of his conditional release order requiring that he reside in a residential treatment facility, and since that time, he has lived on his own in an apartment; he remains under the NGRI verdict, however, and pursuant thereto, an involuntary outpatient commitment plan.

In December 2009, Coogler filed a petition for full release from the NGRI verdict and involuntary outpatient status. The transcript from this hearing established that Coogler was diagnosed with schizoaffective disorder bipolar type with a history of psychotic episodes, although he is also a highly functioning individual with an MBA in accounting. Coogler has lived alone in his own apartment since October 2007, and he has been compliant with taking his prescribed medication (a mood stabilizer and an anti-psychotic) and has never missed his monthly appointments with

5

his doctors or social worker. Although Coogler went to a hospital in June 2008 in order to modify his medication regimen, the testimony presented shows the hospitalization was not a result of an infraction or non-compliance by Coogler, nor did he exhibit any violent behavior at that time. Coogler's mother and sister lived close to him, they had daily phone contact with him, and his mother had physical contact with him approximately three times a week.

At a March 2010 hearing on this petition, two treating psychiatrists and Coogler's assigned social worker all testified that Coogler was not a threat to himself or others, he no longer fit the criteria for involuntary commitment, and they recommended Coogler be fully released from the NGRI verdict. Nevertheless, the trial court denied the petition on the ground that it would be beneficial to have Coogler monitored for another year of involuntary outpatient treatment because he had been stable for such a short period of time.

In July 2011, another hearing was held, at which time his treating psychiatrist and social worker again testified that Coogler no longer met the criteria for involuntary commitment, should be released from the NGRI verdict, and was not a threat to himself or others. The experts testified that there was no less restrictive level of involuntary treatment than that which Coogler had been monitored under for the

past two years, and Coogler had only monthly contact with his social worker and psychiatrist or an equivalent nurse practitioner. Nevertheless, the trial court denied the petition, finding that Coogler should continue under the NGRI verdict for another year so that the court could continue to supervise him and that he still met the criteria for involuntary commitment.

Coogler contends that the trial court erred by not releasing him from the NGRI verdict because he rebutted the presumption of insanity and the need for continued involuntary outpatient commitment. We agree.[11]

As an initial matter, the trial court's order contains a number of factual findings that are contrary to the record. First, the trial court found that the treating psychiatrist would "feel more comfortable having a longer amount of time to assess the likelihood of the [Acquittee] discontinuing his medications." Although in response to the trial court's hypothetical the doctor stated that generally a longer time period of review over a patient could be helpful in determining the likelihood of another incident, he nowhere testified that he thought Coogler specifically needed more time in involuntary care to assess this issue. Instead, he testified that Coogler had "good insight into his condition," was "coping well," was "compliant," independently cared

_____

[11] See *Nelor*, 309 Ga. App. at 169.

for himself, and could be responsible for complying with his treatment without the aid of an involuntary order. This was supported by the testimony of the social worker and by the fact that Coogler had minimal contact with officials during each month but still remained compliant with his treatment.

The trial court also found that the psychiatrist testified that Coogler "would decompensate rapidly if his medications were not taken daily"; however, this again was based on statements by the psychiatrist regarding general time frames of non-compliance during which different patients may begin to show symptoms; he stated that "[i]t's hard to predict because there are some patients that can decompensate in two to three days; other patients that can take up to four, six months or even a year to decompensate." Moreover, the psychiatrist testified that Coogler "doesn't take much . . . to come back from a decompensation. There are some patients [who] would take three or four months to bring them back. . . . [H]e responds . . . quickly."

The trial court also found that Coogler's mother and sister only had contact with him "about [two] times a week." This finding is belied by the record in which Coogler's sister stated that she sees her brother three times per week, every week, and he sees their mother once every week. Other portions of the testimony established that the family had daily phone contact with Coogler. The trial court's order went on to

conclude that the family's lack of frequent contact did "not give the court any assurance that the [Acquittee] will have the appropriate supervision to catch any missed doses at this time." But this conclusion, again, is completely at odds with the record, which shows that Coogler is only in contact with his physician and social worker on a monthly basis, and during the past two years, he has been independently responsible for taking his medications and appearing at appointments without any further supervision by anyone other than himself and his family. Indeed, the only support for the trial court's order appears to be the trial court's own interjections of unsupported, generalized hypothetical questions posed to the experts.

While it is clear that Coogler does have a serious mental illness that led to his actions in 2003, after carefully reviewing the evidence in the light most favorable to the State, we conclude that no rational trier of fact could conclude based on the facts before us that Coogler failed to overcome the presumption of insanity and the continued need for involuntary outpatient treatment. Coogler has shown that he is able to voluntarily comply and seek out individual treatment for his condition, which he has done for the last two years, and based on the testimony by the experts about Coogler's insight into his diagnosis, there is no evidence to support a finding that without involuntary treatment that he would be in danger of *imminently* becoming an

inpatient again. Thus, he does not fit the definition of a mentally ill outpatient under OCGA § 37-3-1 (12.1). Moreover, the only record evidence that Coogler continues to meet the criteria for involuntary treatment is the presumption of insanity, and that is not sufficient evidence when faced with the evidence of sanity presented at the hearings. "[T]he trial court [. . .] may not disregard expert medical evidence and rely solely on the presumption of insanity."[12]

> If no amount of evidence offered at a release hearing by an insanity acquittee could rebut the presumption of insanity, the processes of proof in the due process hearing would be an empty ritual. The sole basis for argument would be an appeal to judicial discretion or mercy rather than to a process of proof.[13]

Here, there is no evidence to support the trial court's finding that Coogler failed to rebut the presumption of insanity, and the trial court therefore erred by denying his petition for full release from the NGRI verdict.

*Judgment reversed. McFadden and Boggs, JJ., concur.*

---

[12] *Nagel*, 262 Ga. at 891 (2) (a).

[13] (Punctuation omitted.) Id. at 890 (1).